Ronald D. MORGAN, D.M.D.,
*Petitioner,*

*v.*

BOARD OF DENTISTRY,
*Respondent.*

(CA A71668)

848 P2d 650

John R. Faust, Jr., Portland, argued the cause for petitioner. With him on the brief were Gary Roberts and Schwabe, Williamson & Wyatt, Portland.

John T. Bagg, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Charles

S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., concurring in part; dissenting in part.

## EDMONDS, J.

Petitioner seeks review of an order of the Board of Dentistry (Board) that disciplined him for violations of ORS 679.140[1] and ORS 679.170(6). We affirm.

Petitioner is licensed to practice dentistry in Oregon. In 1988 and 1989, the Board received complaints from patients he had treated in 1986 through 1988. The Board made a request for those patients' records from petitioner and he complied. In 1990, the Board made an additional demand on petitioner for 20 additional patient files and charts. Instead of responding to the Board, petitioner filed an action for a declaratory judgment in circuit court, seeking a declaration that the Board's demand was too broad. As a result of petitioner's failure to comply with the Board's demand, the Board filed a complaint that proposed to take disciplinary action against him and to revoke his license. After a contested case hearing, it concluded that petitioner had provided unacceptable patient care to the complaining patients, that he had misrepresented the age of a partial denture in order to collect a fee for dental services, and that he was in violation of ORS 679.170(6) for his failure to provide the Board with the additional information that it had requested. For those violations, it imposed sanctions, including the suspension of petitioner's license.

■ Petitioner argues that the Board erred when it suspended his license, because he responded to its demand for information by filing a declaratory judgment contesting the validity of the demand instead of making his objection to the Board. We review for errors of law and for substantial evidence, and we do not substitute our judgment for that of the Board as to any issue of fact or exercise of agency discretion.

---

[1] ORS 679.140(1) provides, in part:

"The board may discipline as provided in this section any person licensed to practice dentistry in this state for any of the following causes:

"* * * * *

"(c) Unprofessional conduct.

"* * * * *

"(e) Engaging in or permitting the performance of unacceptable patient care by the dentist or by any person working under the supervision of the dentist due to a deliberate or negligent act or failure to act by the dentist, regardless of whether actual injury to the patient is established."

ORS 183.482(7), (8). The first issue is whether the filing of a complaint for a declaratory judgment in circuit court by petitioner constitutes a "response" within the meaning of ORS 679.170(6).

Our task in interpreting ORS 679.170(6) is to discern the intent of the legislature. ORS 174.010. We begin with the words of the statute. ORS 174.020. ORS 679.170(6) provides:

"No person shall:

"(6) Within 10 days after demand made by the board, fail to respond to the board's written request for information * * *."

The context of the statute connotes that the response be made to the Board, not to another tribunal. Petitioner's obligation to respond was triggered by a demand made by the Board, the intended recipient of the information. To allow petitioner to comply with the requirement of the statute by responding elsewhere frustrates the purpose of the statute. It follows that, when petitioner filed his complaint in circuit court for a declaratory judgment, he did not "respond" to the Board.

Even if the statute is ambiguous because it is equally susceptible to different reasonable interpretations, the legislative history[2] underlying ORS 679.170(6) indicates that the statute was intended to require that the response be made to the Board. The Board was experiencing situations in which dentists were not responding to inquiries about patient complaints made to it. The statute was enacted to remedy that problem. To interpret it to allow petitioner to circumvent the Board's demand by removing the proceeding to circuit court would be inconsistent with the legislature's intention to provide an administrative remedy for the Board's inability to obtain information that it needs in order to act on complaints.

In *Van Gordon v. Oregon State Bd. of Dental Exam.*, 34 Or App 607, 579 P2d 306, *rev den* 284 Or 235 (1978), a dentist brought an action for injunctive relief against the Board in circuit court after the Board commenced proceedings to suspend or revoke his license. We held that he was not

---

[2] *See* Testimony, House Committee on Human Resources, HB 2762, March 17, 1981, Ex. C.

entitled to relief, because he had not exhausted his administrative remedies. We said:

"As long as a procedure under the APA [Administrative Procedures Act] exists which will permit plaintiff to make the challenges he now makes, he may not shortcut that procedure by seeking premature equitable relief. Such a procedure exists by judicial review on direct appeal to this court, even if plaintiff is unable to make a record before the Board." 34 Or App at 614.

A similar situation exists here. We hold that ORS 679.170(6) contemplates that a response to the Board's demand for information be made to the Board and not to another tribunal. The Board did not err when it found petitioner in violation of the statute for failure to respond to its demand.

Second, petitioner argues that the Board erred in finding him guilty of "unacceptable patient care" under ORS 679.140(1)(c), because that standard had not been defined in an administrative rule. The Board argues that it may discipline a licensee for "unacceptable patient care" without first having defined the term in an administrative rule, because the legislature has provided clear guidance as to what it intended the term to encompass.

ORS 679.140(4) provides that, in order to determine what constitutes "unacceptable patient care," the Board may

"take into account all relevant factors and practices, including but not limited to the practices generally and currently followed and accepted by persons licensed to practice dentistry in this state, the current teachings at accredited dental schools, relevant technical reports published in recognized dental journals and the desirability of reasonable experimentation in the furtherance of the dental arts."

In *Spray v. Bd. of Medical Examiners*, 50 Or App 311, 624 P2d 125, *mod* 51 Or App 773, 627 P2d 25, *rev den* 291 Or 117 (1981), the petitioner argued that "wilful and consistent utilization of medical service or treatment which is or may be considered inappropriate or unnecessary" must be defined by a rule, relying on *Megdal v. Bd. of Dental Examiners*, 288 Or 293, 605 P2d 273 (1980). We said:

"The fault with petitioner's argument lies in its failure to distinguish between inquiries as to the *ethical* standards, on

the one hand, and inquiries as to professional medical treatment standards, on the other. *Megdal* was a case of the former type; the present case, one of the latter. The Supreme Court itself recognized the difference when it said in *Megdal*,

" '* * * While current standards of scientific knowledge and of safe and effective technique in a profession or craft may be determinable from such [outside] sources, disputed ethical standards often are more an issue of policy and values than of the state of the art * * *.' [288 Or] at 308." 50 Or App at 319. (Emphasis in original.)

As in *Spray*, this case does not involve a broad ethical standard that is not defined by statute. Because ORS 679.140(4) provides guidance for determining what constitutes "unacceptable patient care" and because it establishes a standard that can only be determined on an individual case basis, we hold that the Board is not required to make administrative rules defining "unacceptable patient care" before it can discipline dentists under ORS 679.140(1)(e).

Finally, petitioner claims that the Board erred in finding that he committed fraud, under ORS 679.140(1)(c), by misrepresenting the age of a partial denture in a claim to an insurance carrier. He argues that the evidence was not clear and convincing that he knew that his statement was false. Petitioner testified that the patient told him that the partial denture was 10 years old. However, the record contained evidence that the patient and another witness told petitioner that the partial denture was approximately two years old and that the patient's chart contained a notation that it was two years old. Based on that evidence, the Board found that petitioner's testimony was not credible. We hold that the Board's finding is supported by substantial evidence.

Affirmed.

**RIGGS, J.,** concurring in part; dissenting in part.

I disagree with the majority's position that, in filing a claim for declaratory judgment instead of delivering the 20 additional patient files demanded by the Board, petitioner "failed to respond" to the Board's demand and thus violated ORS 679.170(6). The majority essentially agrees with the

Board that, by not *complying* with the demand for information, petitioner "failed to respond."[1] In my view, the legislature did not mean "comply" by its use of "respond" in ORS 679.170(6). "[F]ail to respond," as used in that statute, must mean a failure to take some sort of action that is reasonably intended to, and has the effect of, moving the dispute toward resolution.

The majority holds that

"[t]o allow petitioner to comply with the requirement of the statute by responding elsewhere frustrates the purpose of the statute." 118 Or App at 629.

I disagree. The meaning of "respond" is not clear on the face of the statute and we must resort to legislative history to determine the meaning of that term as well as the legislative purpose in enacting the statute. The legislative history does not, as the majority contends, "[indicate] that the statute was intended to require that the response be made *to the Board*." 118 Or App at 629. (Emphasis supplied.) The statute itself requires only that a petitioner "respond *to the board's written request for information*." ORS 679.170(6). (Emphasis supplied.) The legislative history indicates that the statute was intended to authorize the Board to take action against dentists who *ignore* its demands for information, not against those who fail to comply.[2]

_____

[1] The complaint by the Board against petitioner states:

"On July 13, 1990 the Board issued a Demand For Information to [petitioner] pursuant to ORS 679.170(6) * * *.

"* * * * *

"[Petitioner] did not provide any of the information sought under the Demand for Information within ten days after the date the Demand For Information was made and served.

"The foregoing constitutes the violation of ORS 679.130 which is grounds for discipline under ORS 679.140(1)(d)."

The Board found that petitioner violated the statute because he did not *comply* with the demand.

[2] Dr. Ron Trotman and William J. Radakovich, both members of the Oregon State Board of Dental Examiners, testified before the House and Senate Committees on Human Resources:

"[T]he Board is proposing to add a phrase making it prohibitive [sic] practice for a licensee to fail to respond the Board's written request for information within 10 days after demand. The Board is attempting to make its complaint processing more efficient as well as putting some clout in its Act by being able to sanction dentists who fail to respond to the Board. The Board has experienced

Second, to interpret the statute, as the majority seems to do, to require a petitioner to *comply* with the Board's demands for information leaves a petitioner with no avenue to challenge an overly broad demand, except perhaps on appeal from a contested case hearing. That interpretation means that ORS 183.480(3), which provides for interlocutory appeals when a petitioner shows that an "agency is proceeding without probable cause, or that the petitioner will suffer substantial and irreparable harm," would not apply in a case such as this, because petitioner *could have* appealed the demand to the Board under ORS 183.410. Even though a petitioner *may* appeal to the acting agency, that petitioner should still have access to circuit court review under ORS 183.480(3) if he can show that he will suffer irreparable harm, or that the agency acted without probable cause. If the petitioner can make either of those two showings, appeal to the acting agency would be an exercise in futility and appeal to a court should be available.

The majority misapplies or misreads *Van Gordon v. Oregon State Bd. of Dental Exam.*, 34 Or App 607, 579 P2d 306 (1978). That case did hold that, where there is a procedure under the APA for a petitioner to challenge an agency action, the petitioner cannot "shortcut that procedure by seeking *premature* equitable relief." 34 Or App at 614. (Emphasis supplied.) However, the court in *Van Gordon*, citing ORS 183.480(3), upheld the lower court's injunction against the Board's suspension of the petitioner's license pending the hearing, because the petitioner had no administrative remedy from that suspension. Neither did petitioner in this case, because the Board must have considered that it had the authority to make the demand and appeal to the Board would have been futile.

Although the majority does not directly address the issue, it seems to tacitly accept the Board's unspoken position that its power to demand information pursuant to ORS 679.170(6) is broader than its subpoena power pursuant to ORS 679.250(8). The Board argues that a licensee subject to

---

situations where the dentist will not respond in writing when patient complaints are forwarded to them." Minutes, House Committee on Human Resources 2 (March 17, 1981, Testimony of Dr. Ron Trotman); Minutes, Senate Committee on Human Resources 1 (May 28, 1981, Testimony of William J. Radakovich).

its authority cannot seek interlocutory judicial review of a demand for information, but the licensee can seek such review of a subpoena. If the Board is correct and interlocutory judicial review of a demand for information is unavailable, then a demand for information becomes a stronger and broader tool than a formal, and reviewable, subpoena. It seems incongruous that an agency can use its informal and nonreviewable demand process to force a party within its authority to turn over information that it could not reach using its formal, and reviewable, subpoena power.

I would hold that the Board erred in disciplining petitioner for violating ORS 679.170(6), and I dissent from that portion of the majority opinion that holds otherwise, but I concur with the remainder of the opinion.