Argued and submitted October 31, 2007, conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed June 11, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## RONNIE SCOTT MAYES,
*Defendant-Appellant.*

Wasco County Circuit Court
0400139M; A130492

186 P3d 293

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter Ozanne, Executive Director, Office of Public Defense Services, and Peter Gartlan, Chief Defender, Legal Services Division.

Christina M. Hutchins, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

ORS 163.700(1) provides that a person commits the crime of invasion of personal privacy if, among other things,[1] the victim of the invasion is "in a state of nudity." For purposes of the crime, nudity is defined as

"uncovered, or less than opaquely covered, post-pubescent human genitals, pubic areas or a post-pubescent human female breast below a point immediately above the top of the areola."

ORS 163.700(2)(b). The question in this case is one of first impression: whether the definition of nudity in ORS 163.700(2)(b) applies only to post-pubescent people. We conclude that the definition is so limited. We further conclude, in light of the purposes of the statute, that the time at which a person becomes "post-pubescent," as used in ORS 163.700(2)(b), is after the onset of puberty. We therefore reverse defendant's conviction on one count of invasion of personal privacy for videotaping a prepubescent child.

The relevant facts are not in dispute. Defendant arranged to have small cameras concealed in restrooms in his workplace and in a doctor's office that had hired defendant's business to install telecommunications equipment. Using those cameras over a period between January 2003 and May 2004, defendant secretly videorecorded a number of adult women and two young girls—who were nine and seven years old as of May 2004—using the restrooms. The images that defendant recorded showed the women and girls unclothed from the waist down. According to the girls' mother, as of May 2004 the nine-year-old had been "going through puberty since 2003" and the seven-year-old had not yet begun puberty.

---

[1] ORS 163.700(1) provides, in part, that

"a person commits the crime of invasion of personal privacy if:

"(a)(A)  The person knowingly makes or records a photograph, motion picture, videotape or other visual recording of another person in a state of nudity without the consent of the person being recorded; and

"(B)  At the time the visual recording is made or recorded the person being recorded is in a place and circumstances where the person has a reasonable expectation of personal privacy[.]"

The state charged defendant with multiple counts of violating ORS 163.700 as to the adult women and the girls. At the close of the state's case-in-chief, defendant moved for a judgment of acquittal as to the counts involving the nine-year-old (Count 1) and the seven-year-old (Count 2), arguing that the definition of nudity in ORS 163.700(2)(b) applied only to post-pubescent people. The trial court denied the motion, concluding that "pubic areas" need not be post-pubescent to satisfy the statutory definition of nudity. The jury subsequently convicted defendant on six counts of invasion of personal privacy, including Counts 1 and 2.

On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal as to Counts 1 and 2, renewing his argument that ORS 163.700 applies only to conduct committed against post-pubescent people. To support that assertion, he argues that, in the definition of nudity in ORS 163.700(2)(b)—"post-pubescent human genitals, pubic areas or a post-pubescent human female breast"—the adjectives "post-pubescent human" should be understood to modify both "genitals" and "pubic areas." The state responds that the legislature's decision to repeat the adjectives "post-pubescent human" to modify "female breast" immediately after the reference to "pubic areas" indicates that the legislature intended "pubic areas" to be unmodified. Accordingly, the state argues, ORS 163.700(2)(b) applies to uncovered or less than opaquely covered (1) post-pubescent genitals, (2) pubic areas in any stage of maturation, and (3) post-pubescent female breasts. Thus, the crux of our inquiry focuses on whether the adjectives "post-pubescent human" modify the term "pubic areas."

■ Our task in construing a statute is to discern the intent of the legislature in enacting it. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). To do that, we begin by examining the text of the statute in context. *PGE*, 317 Or at 610. If, after analyzing the text of the statute in context, we conclude that the statute is ambiguous, we consult the legislative history and, if necessary, general maxims of statutory construction to determine the meaning of the statute. *Id*. at 611-12.

■     At the first level of analysis, several principles support defendant's reading of the statute. We are obliged to construe the statute so as to give effect to all relevant provisions. ORS 174.010; *City of Eugene v. Nalven*, 152 Or App 720, 725-26, 955 P2d 263, *rev den*, 327 Or 431 (1998). Accompanying that obligation is our assumption that the legislature did not intend any portion of its enactments—here, the adjective "post-pubescent" as it modifies "human genitals"—to be meaningless surplusage. *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005). In contrast, the state advances several principles to support its position: namely, that we may not insert what has been omitted, ORS 174.010, and that the use of a term in one portion of a statute but not another indicates a "purposeful omission." *Thomas Creek Lumber and Log Co. v. Dept. of Rev.*, 344 Or 131, 137, 178 P3d 217 (2008). In essence, the state argues that the use of "post-pubescent" to modify the words preceding and following "pubic areas" indicates a purposeful omission, and that to adopt defendant's reading would amount to our inserting "what has been omitted."

■■     Although defendant's interpretation of the statute is the more plausible of the two, the ungrammatical structure of the statute and the curious repetition of "post-pubescent human" lead us to conclude that both parties' proposed interpretations are tenable. As we have explained:

> "[T]he threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be 'wholly implausible.'"

*Godfrey v. Fred Meyer Stores*, 202 Or App 673, 686, 124 P3d 621 (2005), *rev den*, 340 Or 672 (2006) (quoting *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994)). Here, neither the state's nor defendant's construction of the statute is "wholly implausible." Further, we have not identified any relevant contextual statutes. Accordingly, we conclude that ORS 163.700(2)(b) is ambiguous, so we turn to its legislative history.

■     At the second level of analysis, we consider the legislative history together with the text in context to determine whether the combination of the two clarifies the legislative

intent. *PGE*, 317 Or at 612. The 1997 legislature enacted ORS 163.700 as Senate Bill (SB) 1076. Or Laws 1997, ch 697, § 1. SB 1076 was introduced in response to incidents in Portland in which the owner of a tanning salon secretly videotaped customers undressing. Tape Recording, Senate Committee on Crime and Corrections, SB 1076, Apr 28, 1997, Tape 87, Side A (statement of Diana Godwin) (explaining that she cowrote the bill in response to tanning-salon case); Tape Recording, Senate Committee on Crime and Corrections, SB 1076, Apr 23, 1997, Tape 84, Side B (statement of attorney Jeff Merrick) (introducing testimony by victims in tanning-salon case). Although the legislative discussion of the definition of nudity in the bill is sparse, the few times that it was discussed indicate that the legislature intended the statute to apply only to conduct committed against post-pubescent people.

Diana Godwin, an attorney who represented several of the tanning-salon victims, cowrote the bill and appeared before the Senate Committee on Crime and Corrections to discuss it. During a discussion of proposed exceptions to the statute that apply to, among other things, certain medical procedures, Senator Hamby asked whether the medical-procedure exception would apply to CARES examinations of children. Tape Recording, Senate Committee on Crime and Corrections, SB 1076, Apr 28, 1997, Tape 87, Side A (statement of Diana Godwin). Godwin initially said that the exception would apply to those examinations, but then paused and said:

> "Although I would say, with a child * * * the definition of nudity applies to post-pubescent individuals, so * * * yeah, there might be some question about that."

*Id.* The next question concerned a different issue, and there was no follow-up to Godwin's comment that the definition applied only to post-pubescent individuals. Later, when discussing the origin of some of the language in the exceptions, Godwin observed that "sexual abuse of a minor can include taking photographs of a minor," citing ORS 163.665 to 163.670. *Id.* Those statutes criminalize the visual recording of children engaging in "sexually explicit conduct," which is

defined, among other things, as "[l]ewd exhibition of sexual or other intimate parts." ORS 163.665(3)(f).

In summary, the coauthor of the bill told legislators that the definition of nudity referred only to post-pubescent individuals. Further, it appears that legislators may have been led to believe—erroneously or not—that other statutes addressed the recording of images of prepubescent people, which supports an inference that the legislature intended ORS 163.700(2)(b) to be limited to post-pubescent people. That inference, combined with Godwin's other testimony, supports defendant's construction of the statute.

Further, the legislative history of the development of the nudity definition refutes the state's construction. The definition of nudity in ORS 163.700(2)(b) was taken from the definition of nudity in ORS 167.060(5). Tape Recording, Senate Committee on Crimes and Corrections, Apr 28, 1997, Tape 87, Side A (statement of Diana Godwin). ORS 167.060(5) is among the obscenity statutes that the legislature adopted in 1971 to govern the sale of obscene materials to minors and the use of certain images in advertising. Or Laws 1971, ch 743, § 255. ORS 167.060(5) defines nudity as

> "uncovered, or less than opaquely covered, post-pubertal human genitals, pubic areas, the post-pubertal human female breast below a point immediately above the top of the areola, or the covered human male genitals in a discernibly turgid state."

The legislature derived that definition, in turn, from a proposed statute drafted by New York prosecutor Richard H. Kuh. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 255, 245 (July 1970). Kuh defined nudity as

> "uncovered, or less than opaquely covered, post-pubertal human male or female genitals, pubic areas, or buttocks, or the human female breast below a point immediately above the top of the nipple (or the breast with the nipple and immediately adjacent area only covered), or the covered human male genitals in a discernibly turgid state[.]"

Richard H. Kuh, *Foolish Figleaves? Pornography In—and Out of—Court* 253 (1967).

To summarize the changes from Kuh's text to the legislature's version, in the original Kuh definition, the body parts are grouped into three types: generalized male or female, female-specific, and male-specific. Within Kuh's first grouping, the term "post-pubertal" clearly modified "pubic areas." The Oregon legislature removed the words "male or female" and "or buttocks" and, in effect, turned Kuh's series of three groupings into a single series containing four items— genitals, pubic areas, the female breast, and covered male genitals in a discernibly turgid state. Additionally, the legislature added "post-pubertal" before "human female breast."

The evolution of the language in ORS 167.060(5) leads us to conclude that the legislature made two substantive changes in Kuh's draft, but otherwise sought only to improve the phrasing of the definition. As it turns out, the legislature did not entirely succeed in the latter effort, because both versions are ungrammatical.

The substantive changes that the legislature made were to delete the references to buttocks and to female breasts in which only the nipple is covered. Those changes narrowed Kuh's definition by excluding those terms from the definition of nudity.

The legislature's effort to improve the phrasing of the definition sought to address a problem in Kuh's definition in its reference to human female breasts. In Kuh's definition, there is no doubt that the adjectives that begin the definition—"uncovered, or less than opaquely covered, post-pubertal"—are intended to modify "human female breast." The problem, however, is that those adjectives are separated from "human female breast" by the article "the." Consequently, Kuh's definition literally reads as "uncovered, or less than opaquely covered, post-pubertal * * * the human female breast," which is not grammatical.

The legislative response to the problem was to insert the adjective "post-pubertal" in the portion of the definition that dealt with the human female breast. The legislative history does not explain the insertion. It appears, however, that the legislature made the change to avoid any suggestion that the definition applied to prepubertal human female breasts. Significantly, nothing in the legislative history suggests that

the legislature made the change in order to alter the definition of nudity to make it apply to prepubertal pubic areas.

As it is, the insertion of "post-pubertal" in the reference to the human female breast still left the definition ungrammatical, because there remains no doubt that the initial adjectival phrase "uncovered, or less than opaquely covered" modifies the reference to the human female breast. Nevertheless, the legislative history establishes that the definition of nudity in ORS 167.060(5) applies to human post-pubertal, not prepubertal, pubic areas, as does the definition of nudity in ORS 163.700(2)(b).[2]

■ Thus, based on the legislative history together with the text of ORS 163.700 in context, we conclude that, by its definition of nudity, ORS 163.700 applies only to people who are post-pubescent. Accordingly, we do not consider canons of construction in order to resolve the meaning of the statute. *PGE*, 317 Or at 612 ("If the legislative intent is clear, then the court's inquiry into legislative intent and the meaning of the statute is at an end and the court interprets the statute to have the meaning so determined.").

■ Here, the people recorded by defendant between January 2003 and May 2004 included a seven-year-old who, according to her mother, had not yet begun puberty, and a nine-year-old who had been "going through puberty since 2003." As to the seven-year-old, a rational trier of fact could not have found beyond a reasonable doubt that she was post-pubescent. Hence, the trial court erred in denying defendant's motion for a judgment of acquittal on Count 2. As to Count 1, which involved the nine-year-old, whether a rational trier of fact could have found that she was "post-pubescent" depends on the meaning of that term, that is, on

---

[2] The state's contrary interpretation assumes that the term "pubic areas" in both nudity definitions is modified by three of the four initial modifiers: "uncovered, or less than opaquely covered, * * * human." The state never explains why the decision to repeat two of the initial modifiers, "post-pubertal" (or "post-pubescent") and "human" in the reference to female breasts means that "post-pubertal" (or "post-pubescent") is the one modifier that does not apply to "pubic areas." Of course, nothing in the legislative history of either statute suggests that the legislature intended the definition of nudity to single out "pubic areas" as the part of the body that need not be post-pubertal in order to be subject to the definition.

when a person becomes "post-pubescent" as used in ORS 163.700(2)(b).

■     Again, as a question of statutory construction, we begin with an analysis of the text of the statute in context. We note at the outset that the text "post-pubescent," as used in ORS 163.700(2)(b) is ambiguous. To start, *Webster's* does not contain a stand-alone definition of "post-pubescent." However, it does define "pubescent" as "arriving at or having reached puberty : characteristic of or relating to this state[.]" *Webster's Third New Int'l Dictionary* 1836 (unabridged ed 2002). In turn, "puberty" is defined, in part, as

> "the *condition of being* or the *period of becoming* first capable of reproducing sexually marked by maturing of the genital organs, development of secondary sex characteristics, and in the human and in higher primates by the first occurrence of menstruation in the female[.]"

*Id.* at 1835 (emphasis added). Further, the prefix "post-" is defined, in part, as "after : subsequent : later[.]" *Id.* at 1771.

Those definitions, although helpful in describing the period of puberty, offer little assistance in our task of determining where the legislature intended to draw the line between post-pubescent and not post-pubescent. By definition, puberty is not a snapshot but rather is a movie—a "condition of being or the period of becoming." Further, adding the prefix "post-" does little to clarify matters, because the definition fails to make clear what, if any, benchmark in the sexual-maturation process a person would need to pass in order to be post-pubescent. Accordingly, "post-pubescent" could mean people who have passed the point of beginning pubescence or, instead, people who have passed the point of completing pubescence. In addition, we have identified no applicable context to resolve that ambiguity. Hence, the term is ambiguous, requiring us to consult the legislative history and, if necessary, canons of statutory construction.

The legislative history is silent on the issue at hand. However, the legislative history explored above, 220 Or App at 389-91, indicates that the purposes of ORS 163.700 are twofold: to punish those who surreptitiously record people in the nude, and to protect from such recording people using

restrooms, tanning salons, and other places where they are required to undress. Other portions of the legislative testimony support that conclusion. *See, e.g.*, Tape Recording, Senate Committee on Crime and Corrections, Apr 23, 1997, Tape 84, Side B (statement of Sen Shirley Stull) (explaining that bill is needed to protect Oregonians from "outrageous conduct" such as what occurred at Portland tanning salon); Tape Recording, House Committee on Judiciary, June 11, 1997, Tape 50, Side B (statement of Rep Ron Sunseri) (explaining that bill is intended to cover situations where people have put up video cameras in public restrooms, tanning salons, and other places where they should not have done so).

■■   We turn, then, to canons of construction. Two of the canons support the construction that the time after the *onset* of puberty is the proper measure of when a person is "post-pubescent," as used in ORS 163.700. First, we are to construe statutory language in a manner that is consistent with its purposes. *Welliver Welding Works v. Farmen*, 133 Or App 203, 210, 890 P2d 429 (1995). Second, we attempt to discern what the legislature "*would have* intended had it considered th[e] problem." *State v. Abdelrasul*, 111 Or App 276, 279, 826 P2d 58 (1992) (emphasis in original). Within that second inquiry, "we are guided by what the legislature or the courts have identified as the broader purpose of the statute." *Godfrey*, 202 Or App at 689.

As we noted above, one purpose of ORS 163.700 is to protect people from the embarrassment and violation of privacy from being secretly videorecorded in a state of nudity. In accordance with that purpose, it would seem that a person who has begun to mature sexually would feel just as violated by such conduct as a person who has completed sexual maturation. Similarly, in light of the statutory purpose to punish people who set up hidden cameras in restrooms, locker rooms, tanning salons, and similar places, we cannot infer that that conduct is any less reprehensible when the victim has not yet completed puberty. Along those same lines, had the legislature considered this precise issue, we are persuaded that it would have chosen, in conformity with the purposes of the statute, the earliest time that post-pubescence could be said to have commenced.

Thus, we conclude that the term "post-pubescent," as used in ORS 163.700(2)(b), refers to any time after the onset of puberty. Here, the evidence of the nine-year-old's sexual development included testimony from her mother that she had been "going through puberty since 2003," and that she was nine years old as of May 2004, the latest time that defendant could have recorded her. Based on that evidence, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that the nine-year-old was post-pubescent. Accordingly, the trial court did not err in denying defendant's motion for a judgment of acquittal as to that count.

Conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed.