AOYAGI, J.
*471 The Board of Dentistry suspended petitioner's license to practice dentistry after concluding that he violated ORS 679.170(6) by failing to respond to two information requests from the board. Petitioner seeks judicial review of the board's order. In his first assignment of error, petitioner argues that he did not "fail to respond" within the meaning of ORS 679.170(6). In his second assignment of error, he asserts that, if the order stands as to the violations, then the board abused its discretion by imposing an excessive sanction. For the reasons that follow, we conclude that the board erred in deciding on summary determination that petitioner violated ORS 679.170(6). Accordingly, we reverse and remand. Because of our disposition of the first assignment of error, we do not reach the second assignment of error.
*449 STANDARD OF REVIEW
The board based its final order on a grant of summary determination. In contested case proceedings before the Board of Dentistry, an administrative law judge (ALJ) "shall grant" a motion for summary determination if, considering "all evidence in a manner most favorable to the non-moving party," there is "no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought" and the moving party "is entitled to a favorable ruling as a matter of law." OAR 137-003-0580 (model rule); OAR 818-001-0005 (Board of Dentistry's adoption of model rule). We state the facts in accordance with that standard, and we review for legal error. Wolff v. Board of Psychologist Examiners , 284 Or. App. 792, 800, 395 P.3d 44 (2017).
FACTS
Petitioner is an orthodontist licensed by the board to practice dentistry in Oregon. In October 2014, petitioner and the board entered into a consent order in conjunction with a disciplinary settlement. Among other things, the consent order required petitioner to submit his next 20 completed cases to an approved reviewer before removing the patients' orthodontic bands : "At the completion of treatment *472 for the next 20 active patients, but prior to debanding, Licensee shall submit the cases for evaluation to a reviewer, preapproved by the Board and Licensee * * *." In the event that petitioner violated any terms of the consent order, the order allowed the board, "after notice and hearing, [to] enter further disciplinary orders including license revocation."
On July 22, 2015, Wilcox, a reviewer who had been approved by the board, notified the board that petitioner had not contacted him to review any cases during the nine months since entry of the consent order. The board sent a letter to petitioner on the same day, requesting information:
"By your Consent Order, dated 10/17/14, you agreed to submit 20 orthodontic cases for review prior to debanding. Please submit to the Oregon Board of Dentistry a list of those patients for whom you have removed bands since 10/17/14 and identify the dentist(s) who reviewed those cases.
"If you have not removed bands from any patient since 10/17/14, provide a written narrative explaining why that has not happened.
"Oregon law requires that you respond to this written request within ten days. Failure to respond within ten days may constitute a violation of the Dental Practice Act. Please contact the Board as soon as possible if you need an extension of time."
During August 2015, the board twice contacted the law firm that represented petitioner and was told that a response to the board's letter was forthcoming. The board also called petitioner's office and learned from his staff that petitioner was accepting new patients and was booked into October.
On September 21, 2015, the board sent another letter to petitioner, repeating its prior information request and adding a new one:
"By letter dated 7/22/15, copy enclosed, the Oregon Board of Dentistry requested information regarding the review of orthodontic cases per your Consent Order, dated 10/17/14. The Board has no record that you responded to that request.
*473 "Please respond to the Board's 7/22/15 request. Additionally, provide a written narrative why you did not respond to the Board's 7/22/15 request within ten days.
"Oregon law requires that you respond to this written request within ten days. Failure to respond within ten days may constitute a violation of the Dental Practice Act."
On September 30, 2015, petitioner, who was no longer represented, sent a letter to the board, which stated in its entirety:
"The requested response to your letter of July 22, 2015 was mailed to you on July 27, 2015, well within the 10 day timeline.
"The requested response was intentionally placed in the same envelope as Check No. 14949 payable to the Oregon Board of Dentistry to verify its receipt.
"Check No. 14949 payable to the Oregon Board of Dentistry (Copy Enclosed) cleared the bank on [August] 11, 2015, *450 unequivocally proving your receipt of the requested response.
"How about we stop playing games and treat each other with respect."
Petitioner enclosed a copy of the canceled check, which was in the amount of the civil penalty imposed under the consent order and included a notation of the case number.
On October 6, 2015, the board sent a third letter to petitioner:
"The Oregon Board of Dentistry received your letter dated 9/30/15. The Board did not receive a response to its letters of 7/22/15 or 9/21/15. If you did provide a response, please send a copy of that correspondence as soon as possible. * * *
"The Board received your check #14949 on 8/10/15. The check was not accompanied by a cover letter or any other correspondence."
Petitioner did not reply to the board's third letter. On November 16, 2015, the board issued a notice of proposed license suspension to petitioner. The board alleged that petitioner had committed three violations of *474 ORS 679.170(6), specifically that he had failed to respond within 10 days to each of the board's information requests of July 22, September 21, and October 6, 2015.
Petitioner, who had retained new counsel, requested a hearing, and the case was assigned to an ALJ. Prior to the scheduled hearing date, the board moved for summary determination. The entire summary determination record was provided by the board and consisted of the consent order, the four letters between the board and petitioner described above, and a declaration from the board's investigator. Based on that evidence, the board argued that there were no questions of material fact and that it was entitled to a ruling in its favor as a matter of law.
On April 25, 2016, the ALJ issued a written ruling. The ALJ denied summary determination on the first alleged violation. She explained that, given petitioner's assertions in his September 30 letter, which had to be viewed in the manner most favorable to him as the nonmovant, "there remain material facts in issue regarding the Board's allegation involving the July 22, 2015 letter, i.e. , whether Licensee did timely respond to the Board's July 22, 2015 letter." The ALJ granted summary determination on the second and third alleged violations, however, stating,
"On September 21 and October 6, 2015, the Board sent letters to Licensee repeating its July 22, 2015 request that he provide a list of patients that he had debanded and the name of the reviewing dentist or, if he has not debanded any patients, the reason for the lack of debanding. Licensee failed to provide that information to the Board in response to either of those demands. Even after the Board advised Licensee that it had never received any written response to its July 22, 2015 letter, Licensee still failed to provide the Board the requested information or a copy of his July 27, 2015 response that he asserted he had already submitted to the Board. Licensee's failures to comply with the Board's demands violated * * * ORS 679.170(6)."
The ALJ did not issue a proposed order because the first allegation remained in dispute but noted that she would do so if the board voluntarily dismissed that allegation.
*475 On May 4, 2016, the board voluntarily dismissed the first allegation and requested that the ALJ enter a proposed order. Separately, on the same date, petitioner moved for reconsideration of the summary determination ruling. In addition to making various legal arguments, petitioner attached copies of the items that he claimed to have sent to the board with his check in late July, i.e. , what he considered to be his "response" to the board's letter of July 22, 2015, which were not previously in the record.
On May 12, 2016, the ALJ issued a slightly modified summary determination ruling, denied petitioner's motion for reconsideration, and proposed an order to the board. The summary determination ruling was identical to the original ruling except that it reflected the fact that the board had dismissed the first alleged violation. The ALJ denied petitioner's motion for reconsideration, including rejecting petitioner's efforts to supplement the record after she had ruled. She noted that the applicable rules did not provide for "any post-ruling expansion of the record." Finally, the ALJ proposed that petitioner's *451 license be suspended until he provided certain patient information to the board and that he be ordered to pay the costs of the disciplinary proceeding.
Petitioner filed exceptions. On June 17, 2016, the board rejected those exceptions and issued its final order. The board adopted the ALJ's rulings on the board's motion for summary determination and on petitioner's motion for reconsideration. As sanction for the two violations, the board suspended petitioner's license "pending further order of the Board, before which the Board will determine that all pending issues of prohibited practices were fully addressed by the Licensee." It required petitioner to provide patient information beyond that required by the consent order or the ALJ's proposed order. And it ordered petitioner to pay the costs of the disciplinary proceeding.
Petitioner filed a timely petition for judicial review.
ANALYSIS
In his first assignment of error, petitioner asserts that the board erred in concluding that he twice violated *476 ORS 679.170(6) by failing to respond to the board's requests. ORS 679.170(6) states, in relevant part:
"No person shall:
"* * * * *
"(6) Within 10 days after demand made by the board, fail to respond to the board's written request for information * * *."
The heart of the parties' dispute is what it means to "fail to respond." Petitioner essentially argues that ORS 679.170(6) allows for any response whatsoever. The board's position is more equivocal. In its briefing, the board asserts that to "respond" means to provide the requested information. At oral argument, however, the board suggested that an objection to the board's request might constitute a response, at least in certain circumstances. In either event, however, the board maintains that some meaningful response is required. In the board's view, the purpose of ORS 679.170(6) is to provide the board with an investigative tool and help it carry out its investigative mission, and the provision "would be of little use if a non-responsive response satisfied" it. For example, the board posits, telling the board to "go fly a kite" would constitute a failure to respond for purposes of ORS 679.170(6).
To resolve petitioner's first assignment of error, we must decide what the legislature intended by "fail to respond" in ORS 679.170(6). We follow the familiar methodology described in PGE v. Bureau of Labor and Industries , 317 Or. 606, 611, 859 P.2d 1143 (1993), and State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). That is, we give "primary weight" to the text and context of the statutory provision, but we also may consider any useful legislative history, to discern and effectuate the legislative intent as reflected in the words of the statute. Gaines , 346 Or. at 171-72, 206 P.3d 1042.
ORS chapter 679 governs the practice of dentistry. See ORS 679.010 - 679.991. The disputed provision, ORS 679.170(6), states that no person shall, "[w]ithin 10 days after demand made by the board, fail to respond to the board's written request for information." The legislature *477 has not defined "respond" for purposes of ORS 679.170(6) or specified a particular type of response. We therefore consider the ordinary meaning of the word. PGE , 317 Or. at 611, 859 P.2d 1143 (presumption that statutory terms have their plain, natural, and ordinary meaning).
The ordinary meaning of "respond" is to "say something in return : make an answer." Webster's Third New Int'l Dictionary 1935 (unabridged ed. 2002) (Webster's ). If a licensee needed only to "say something" in order to "respond" to the board's request for information, then a licensee could literally say anything and the board would have no enforcement authority under ORS 679.170(6). A single word answer would suffice: "No." Indeed, a letter discussing the history of Rome would do.
But to "say something in return " or "make an answer " seems to require more. Webster's at 1935 (emphases added); see also id. at 1941 (defining "return" as including "to speak or write in answer"). Common definitions of "answer" include, as relevant here, "something spoken or written in reply"; "a *452 response to a question, call, summons, or appeal"; "a rejoinder to a remark, argument, or objection"; "a correct response to a question intended to test knowledge"; and a "reply to a charge or accusation." Webster's at 90. All of those definitions suggest a response that is, for lack of a better word, responsive . Thus, for example, if someone asks a question, and the respondent gives a nonsensical or off-topic "answer," the questioner might say, "Please answer the question."
The only case law interpreting ORS 679.170(6) is our decision in Morgan v. Board of Dentistry , 118 Or. App. 626, 848 P.2d 650, rev. den. , 317 Or. 162, 856 P.2d 318 (1993), and it is consistent with that understanding of "respond." The issue in Morgan was whether a dentist failed to respond to an information request from the board when he filed a declaratory judgment action in circuit court challenging the validity of the board's request. Id. at 628, 848 P.2d 650. We concluded that the dentist had violated ORS 679.170(6) because the legislature intended licensees to respond to the board . Morgan , 118 Or. App. at 630, 848 P.2d 650. The dentist failed to respond to the board when he filed an action in circuit court "instead of making his objection to *478 the Board." Id. at 628, 848 P.2d 650. Without saying so expressly, Morgan assumes that a response to the board must be responsive to avoid a violation of ORS 679.170(6) -otherwise, serving the summons would have been sufficient. Instead, we concluded that the dentist needed to, at the least, make an objection to the board.
The ordinary meaning of "respond" and our prior decision in Morgan both support a tentative conclusion that "fail to respond" in ORS 679.170(6) encompasses both silence and a nonresponsive reply. That does not, however, conclude our analysis. We look next to context.
As previously mentioned, nothing in chapter 679 defines or clarifies what it means to "fail to respond." The one analogous professional regulatory statute of which we are aware that contains a similar phrase is of no assistance due to its own lack of interpretative case law. See ORS 685.110(21) (prohibiting naturopathy licensees from "[f]ailing to respond in a timely manner to a request for information" regarding a complaint or board investigation). The only similar provision with any interpretative history at all appears to be a rule of professional conduct governing lawyers, RPC 8.1(a)(2), which provides that, in connection with a disciplinary matter, a lawyer shall not "knowingly fail to respond to a lawful demand for information from [a] disciplinary authority." Notably, the Supreme Court has suggested that RPC 8.1(a)(2) requires a responsive response. In In re Paulson , 346 Or. 676, 695, 216 P.3d 859 (2009), adh'd to as modified on recons. , 347 Or. 529, 225 P.3d 41 (2010), it concluded that an attorney had violated RPC 8.1(a)(2) when he initially did not reply at all to an information request and later replied with a "nonresponsive sentence citing various Bar Rules and ORCP 10." We cannot say that RPC 8.1 (a)(2) provides "context" for ORS 679.170(6) -it was promulgated by the Oregon State Bar's board of governors, not the legislature, and was adopted decades after ORS 679.170(6). Nonetheless, the court's interpretation of RPC 8.1(a)(2) is relevant if for no other reason than it appears to rely on the ordinary meaning of "respond."
We next consider the legislative history provided by the parties. ORS 679.170(6) was enacted in 1981 to remedy *479 a problem where "[t]he Board was experiencing situations in which [licensees] were not responding to inquiries." Morgan , 118 Or. App. at 628, 848 P.2d 650. As enacted, and still today, the statute states that no person shall "fail to respond to the board's written request for information" within 10 days. Or. Laws 1981, ch. 185, § 3; ORS 679.170(6). Members of the Board of Dentistry testified in committee hearings that the board was seeking the new statutory provision "to make its complaint processing more efficient" and to "put[ ] some clout in its Act by being able to sanction dentists who fail to respond to the Board." Testimony, House Committee on Human Resources, H.B. 2262, Mar. 17, 1981, Ex. C (statement of Ron Trotman, D.M.D.); Testimony, Senate Committee on Human Resources/Aging, H.B. 2262, May 28, 1981, Ex. B (statement of William J. Radakovich). *453 The legislative history of ORS 679.170(6) does not reveal directly what the legislature intended by the words "fail to respond." It does speak to the provision's general purpose, however, which is relevant to two canons of statutory construction. First, "we are to construe statutory language in a manner that is consistent with its purposes." State v. Mayes , 220 Or. App. 385, 395, 186 P.3d 293 (2008). Second, when a specific issue is not addressed clearly in a statute or its legislative history, we use "the broader purpose of the statute" as a guide in our "attempt to discern what the legislature would have intended had it considered" it. Id. (internal quotation marks and alterations omitted). Thus, when two possible interpretations of a statutory provision are proposed, one of which effectuates the legislative intent and one of which does not, we seek to effectuate the legislative intent so long as doing so is consistent with the provision's text and context. See, e.g. , id. at 395-96, 186 P.3d 293 (interpreting ORS 163.700 in a manner consistent with its broader purposes).
Here, as the board argues, ORS 679.170(6) would serve little or none of its intended legislative purpose if "respond" were interpreted to mean any response in the broadest possible sense of the word, including simply saying "no" or even saying something completely unrelated to the board's request. The only way to read ORS 679.170(6) to effectuate its legislative purpose is to interpret "respond"
*480 to require a meaningful response or, as the board puts it, a "responsive" response. That resolves any remaining ambiguity. We conclude that, under ORS 679.170(6), a person "fail[s] to respond" to a written request for information from the board if the person meets the request with silence or provides a nonresponsive reply.
To be clear, that does not necessarily mean that the person must provide the requested information to avoid a violation. Morgan left open the possibility that making an objection to the board might be sufficient, at least in some circumstances, even if the person does not comply with the request. See Morgan , 118 Or. App. at 628-30, 848 P.2d 650.[1] Because of the posture of this case, we have no occasion, nor have the parties asked us, to address that issue any further at this time. However, our present holding should be understood in the context of Morgan .
Having now construed the disputed statutory provision, we address the specifics of this case. The board determined that petitioner violated ORS 679.170(6) on two occasions: when he failed to respond to the board's request of September 21, 2015, and when he failed to respond to the board's request of October 6, 2015. We cannot look at those requests in isolation, however, because the parties' September and October correspondence refers back to the board's request of July 22, 2015, and petitioner's alleged response of July 27, 2015. We therefore begin with the July request.
We disagree with petitioner that, by voluntarily dismissing the first allegation, the board "conceded" that petitioner had responded to the board's request of July 22, 2015. Merely dismissing the allegation did not constitute a concession that he had responded.[2] At the same time, as *481 discussed below, we reject the board's position that it was entitled to summary determination on the alleged September and October violations regardless of whether petitioner responded to the July request. With respect to the July request, we emphasize two points. First, petitioner's alleged response of July 27, 2015, is not part of the summary determination record. *454 Petitioner attached a copy of it to his motion for reconsideration, but the ALJ refused to allow supplementation of the record at that point. The board adopted that ruling, and petitioner does not challenge it on review. Second, the ALJ concluded in her first summary determination ruling that there were "material facts in issue regarding the Board's allegation involving the July 22, 2015 letter, i.e. , whether Licensee did timely respond to the Board's July 22, 2015 letter."[3] That language does not appear in the final order, due to the board's intervening voluntary dismissal of the first allegation, but the board continues to cite it and to recognize the existence of a fact dispute on that issue. For purposes of this appeal, we do the same.
We therefore start by acknowledging the unknown: petitioner might have responded to the board's request of July 22, 2015, or he might have failed to respond. With that in mind, we turn to the alleged September violation. On September 21, 2015, the board requested that petitioner provide the patient information that it had requested on July 22, along with an explanation for not providing it *482 earlier. Petitioner replied on September 30, 2015, that he had mailed the "requested response" on July 27, and he attached evidence that the board had received a mailing from him. Petitioner argues that he did not violate ORS 679.170(6) because he "responded" to the board's request of September 21 by sending his letter of September 30. The board counters that petitioner did not "respond" because the letter of September 30 was nonresponsive, by which it appears to mean that petitioner did not send a copy of the requested information and was required to do so regardless of whether he had already done so in July.
On this summary determination record, we conclude that the board erred in deciding as a matter of law that petitioner had failed to respond to the board's request of September 21, 2015, and thereby violated ORS 679.170(6). In short, it was premature for the ALJ to have decided that issue as a matter of law-and for the board to have adopted that ruling-without knowing what, if anything, petitioner had sent to the board on July 27, 2015. If he sent nothing, or sent something nonresponsive, then he violated the statute in July and continued to be in violation in September, whether characterized as one violation or two. If he responded in July, however, within the meaning of ORS 679.170(6), then we disagree that petitioner's letter of September 30, 2015, was nonresponsive to the board's request of September 21, 2015. It might have been curt and not overly helpful, but it did notify the board that petitioner had already responded, provided the date of mailing, and provided evidence of the board's receipt. In appropriate circumstances, we cannot say that such a letter would constitute a failure to respond. Thus, a genuine dispute of material fact exists as to whether petitioner's letter of September 30, 2015, was responsive, which in turn depends on what, if anything, petitioner sent to the board with his check on July 27, 2015.
The board also erred in deciding on summary determination that petitioner failed to respond to its request of October 6, 2015, and that he thereby violated ORS 679.170(6). In its letter of that date, the board notified petitioner that it had not received a "response" to its prior requests for information and asked that, if petitioner did in fact "provide a *483 response," that he send another copy. Petitioner did not reply. On review, petitioner argues that he did not need to *455 reply because he had already sent his response; in other words, he questions the board's right to ask for multiple copies of the same response. The board maintains that it is free to keep requesting information.
The parties' disagreement raises a potentially interesting question about whether a person "fails to respond" to a request for information within the meaning of ORS 679.170(6) if the person does respond, but the board misplaces the response and requests another copy after making reasonable efforts to locate it, and the person declines to send another copy. We do not reach that issue, however, because of the limits of this summary determination record and the specifics of the board's October request. The October letter was different from the July and September letters. Whereas the board previously had requested specific patient records and narrative explanations, in its October letter the board requested only copies of any "responses" that petitioner had previously sent. Specifically, the board stated that it had received defendant's letter of September 30, but that it had not received a "response" to its July 22 or September 21 letters, and requested that, "[i ]f you did provide a response , please send a copy of that correspondence as soon as possible." (Emphasis added.)
By its own terms, the October request did not request copies of all prior correspondence, but rather requested only copies of any previously provided "response." And, in context, the board was using "response" in the same sense as "respond" in ORS 679.170(6). That is apparent for two reasons. First, the board's prior requests of July 22 and September 21 both referenced petitioner's obligation to "respond" within 10 days or else face a potential violation of "the Dental Practice Act"-see OAR 818-001-0002(2) (defining the "Dental Practice Act" to mean ORS chapter 679, ORS 680.010 to 680.170, and the rules adopted pursuant thereto)-so it would be inconsistent for the board to use "response" in the October letter to mean any correspondence. Second, the board starts the October letter by acknowledging receipt of petitioner's letter of September 30, *484 and then states in the very next sentence that the board has not received any "response" to its prior requests, making clear that it was using "response" in a narrower sense than any reply whatsoever. It was not, for example, requesting another copy of petitioner's September 30 letter.
As such, even assuming that the board may request another copy of a prior response to an information request, there is an unresolved factual question whether petitioner ever responded-within the meaning of ORS 679.170(6) -to the July request and, by extension, the September request. If he did , then he may have violated ORS 679.170(6) by failing to provide another copy of that response in October, after the board notified him that, according to its records, the check that petitioner sent in July "was not accompanied by a cover letter or any other correspondence." Conversely, if petitioner did not respond to the July request (and, by extension, the September request), he had no prior "response" to resend in October, so the October letter required nothing of him. The genuine disputes of material fact that exist as to whether petitioner "responded" to the board's requests of July 22 and September 30, 2015, must be resolved to determine whether petitioner failed to respond to the board's request of October 6, 2015.
CONCLUSION
In sum, we conclude that the ALJ erred in granting summary determination and that the board erred in entering a final order based on that summary determination. There is a genuine dispute of material fact whether petitioner responded to the board's request of July 22, 2015, within the meaning of ORS 679.170(6), which must be resolved to determine whether petitioner's letter of September 30, 2015, was responsive to the board's request of September 21, 2015. Similarly, without knowing whether petitioner responded to the July and September requests, the board could not determine whether he needed to respond to the October request, given the limited and conditional nature of that request. Accordingly, the board erred in deciding the matter on summary determination. Because of our disposition of petitioner's first assignment of error, in which he challenges *456 the board's grant of summary determination on the violations, *485 we do not reach his second assignment of error, in which he challenges the sanction imposed.
Reversed and remanded.

To the extent that the dissent in Morgan interpreted the majority opinion as "essentially" requiring compliance, 118 Or. App. at 631-32, 848 P.2d 650 (Riggs, J., concurring in part; dissenting in part), we disagree. We understand Morgan to leave open whether an objection to the board might avoid a violation of ORS 679.170(6).

Conversely, we reject petitioner's argument that the board improperly decided in its final order that he did not respond. The board adopted the ALJ's statement that, "[w]hen the Board failed to receive any reply from Licensee to its July 22, 2015 letter, it had reasonable grounds to repeat its demand, especially after Licensee's office advised the Board that Licensee was still practicing dentistry." In context, that statement means only that it was reasonable for the board to request the information again in September because it had no record that it had received a response to its July request-regardless of whether petitioner sent one.

The board's investigator attested in a declaration that the board had "not received a response to any of [its] three letters." (He elsewhere mentioned petitioner's letter of September 30, 2015, but plainly did not consider it a response.) The only evidence in the summary determination record that petitioner did respond to the board's July request was a statement in the September 30 letter wherein petitioner asserted that he mailed the requested response on July 27. In a civil action, a hearsay statement typically is insufficient in and of itself to create a genuine dispute of material fact. See ORCP 47 (facts must be set forth "as would be admissible in evidence"). Hearsay is viewed differently in agency proceedings, however, and no one has questioned the ALJ's conclusion. See Petteys v. DMV , 195 Or. App. 644, 648, 98 P.3d 1138 (2004). We therefore accept the board's position that a dispute of fact existed about whether petitioner responded to its July request-which was never resolved because the board voluntarily dismissed that allegation.