DEHOOG, P. J.
*1046 *570 Youth appeals from an order of the juvenile court modifying youth's decade-old delinquency disposition. The court relied on ORS 419C.610, which authorizes a juvenile court to "modify or set aside any order made by it upon such notice and with such hearing as the court may direct." Acting on the state's motion, the court vacated its "deferral" of two requirements in the original disposition, with the result that the modified disposition required youth to register as a sex offender and provide a DNA sample for the state criminal identification database. Given the unique posture of this case, we conclude that the court did not err and, accordingly, affirm.
The relevant facts are procedural. In 2004, youth, then age 14, admitted to having committed acts that would constitute first-degree sodomy if committed by an adult. In the juvenile court's dispositional order committing youth to the custody of the Oregon Youth Authority (OYA), the juvenile court indicated that it had "deferred" two conditions, as follows:
"7. The youth is within the jurisdiction of the court for having committed an act which if done by an adult would be a crime specified in Oregon laws 1991-Chapter 669 and therefore the court orders that the youth provide a DNA sample at the direction of the probation/parole officer for submission to the DNA databank. (Deferred)
"8. The youth will comply with sex offender registration as required by law. (Deferred)"
The court's order suggested that the court would consider making those "deferrals" permanent in a later proceeding, in which it might vacate its jurisdictional order altogether if the circumstances warranted:
"The blood draw and sex offender registration are deferred until a decision is made regarding vacating jurisdiction. If the youth successfully completes all conditions of probation, upon written factual findings the Court may vacate the order taking jurisdiction and have all admissions(s) [sic ] set aside and charge(s) dismissed."
In 2010, however, while youth was still in OYA custody, the state prosecuted youth for two adult felonies, *571 attempt to commit second-degree assault, ORS 161.405 (2)(c), and unlawful use of a weapon, ORS 166.220, both of which resulted in guilty pleas. Because those offenses led to youth's incarceration in an adult facility, his OYA parole/probation officer wrote the juvenile court and requested "that [youth's] commitment to the Oregon Youth Authority be terminated and that his wardship be vacated." In response, the juvenile court entered an "order terminating jurisdiction pursuant to ORS 419C.005(4)(c)," which stated as follows: "Based on a review of the Court's file and the recommendation of [OYA], the Court finds that it is in the best interests of the youth offender and the community that jurisdiction is terminated. It is ordered that Juvenile Court jurisdiction is terminated." (Uppercase omitted.) Neither OYA's request nor the resulting order explicitly addressed the two conditions that the 2004 disposition had "deferred."
In 2014, law enforcement became aware that, despite his juvenile adjudication for sodomy, youth-who by then was 24 years old-was living in the community but was not registered as a sex offender. As a result, the state filed a motion asking the juvenile court to modify its 2004 order by lifting the deferral of the requirements that youth provide a DNA sample and register as a sex offender. In response to the state's motion, the court appointed counsel for youth and, following a hearing, concluded that it had authority to modify the 2004 order pursuant to ORS 419C.610.[1] Rather than immediately grant the state's request, however, the court postponed its ruling to give youth an opportunity to submit evidence related to the court's exercise of discretion regarding the state's *1047 motion. In part because some of youth's records had been destroyed in a courthouse fire, the court suggested that it would authorize funds for youth to obtain a current psychological evaluation. Youth ultimately submitted favorable letters from his probation officer and a former teacher, but the record does not reflect whether he attempted to obtain an updated evaluation.
At a subsequent hearing, after hearing from counsel and allowing youth to read a prepared statement, the *572 court granted the state's motion. Although it acknowledged the positive comments that youth's probation officer had offered, the court explained to youth that it needed "to feel certain that you present a low risk," and that it could not do so without a current psychological evaluation, which it did not have. Accordingly, the court entered the following order granting the state's motion:
"The July 9, [2004] order is modified to vacate the deferral of conditions 7 and 8 of the July 9, 2004 amended order of commitment to the Oregon Youth Authority, and that the Youth shall provide a DNA sample for submission to the DNA databank as well as comply with sex offender registration as required by [former ] ORS Chapter 181."[2]
On appeal under ORS 419A.200(1),[3] youth asserts that the court erred in modifying the order to vacate the deferral of those conditions. The parties both state that we review the juvenile court's decision to modify the order under ORS 419C.610 for abuse of discretion. Youth's argument, however, is that ORS 419C.610 does not authorize the court's modification here. The parties' dispute therefore presents a question of statutory construction, which we review for errors of law. State ex rel. Juv. Dept. v. Tyree , 177 Or.App. 187, 189, 33 P.3d 729 (2001).
We begin by noting what youth does not argue on appeal. First, although the state devotes much of its response to this point, youth understandably does not contend that the termination of exclusive juvenile court jurisdiction under ORS 419C.005(4)[4] deprived the juvenile court *573 of subject matter jurisdiction to modify its order pursuant to ORS 419C.610. See ORS 419B.090(1) ("The juvenile court is a court of record and exercises jurisdiction as a court of general and equitable jurisdiction and not as a court of limited or inferior jurisdiction."); cf. State v. C. E. B. , 254 Or.App. 353, 360, 295 P.3d 118 (2012) (holding that, under ORS 419C.261, a juvenile court may dismiss a delinquency petition even when the youth "is no longer within the juvenile court's jurisdiction under ORS 419C.005"). And, second, youth concedes that it is undisputed that the court had no authority to "defer" the requirements of sex offender registration and submission of a DNA sample, which were mandatory conditions in 2004 and remain mandatory today. ORS 419C.473 (DNA sample); former ORS 181.595 - 181.596 (2003) (sex offender registration); ORS 163A.025 (sex offender registration).[5] *1048 The mandatory nature of those conditions prompted us to request and consider memoranda from the parties on whether this case is moot. We conclude that it is moot as to the requirement that youth register as a sex offender, but not moot as to the requirement that he provide a DNA sample. We base those conclusions on the following.
In 2015 and 2016, the legislature removed, and then reinstated, the requirement that individuals with juvenile adjudications for certain sex offenses register as sex offenders. See Or. Laws 2015, ch. 820, § 8; Or. Laws 2016, ch. 95, § 1. In light of youth's 2004 adjudication for sodomy, the current statute requires him to register as a sex offender even in the absence of a court order to register. ORS 163A.025 (1)(b) (requiring registration by a person adjudicated to have committed a qualifying juvenile offense where juvenile court jurisdiction ended prior to August 12, 2015). The only exceptions to that requirement are when an individual has obtained a court order under ORS 163A.130 granting relief from the obligation to report or the adjudication has been *574 reversed or vacated. See ORS 163A.025(1), (7). Because our decision would not relieve youth from the requirement that he register as a sex offender, it can have no "practical effect on the rights of the parties" in that regard, and the registration issue is moot. Brumnett v. PSRB , 315 Or. 402, 405, 848 P.2d 1194 (1993).
As for the requirement that youth provide a DNA sample, the state informs us that youth should already have provided a DNA sample for the state DNA database due to his adult felony convictions. See ORS 137.076 (stating that requirement). That requirement, however, does not render moot the issue of youth's obligation to submit a DNA sample. Nothing in the record or briefing establishes that youth did, in fact, provide a sample as a result of his adult convictions, or that he could not be compelled to give a second sample if he has already given one. We therefore proceed to consider the merits of youth's appeal, but only as it relates to the term requiring youth to provide a DNA sample.
Returning to the merits, youth's argument is limited to the contention that ORS 419C.610 does not allow the state "to impose additional requirements" upon a youth offender after the youth "has fully served his disposition" and jurisdiction has terminated under ORS 419C.005(4).[6] Youth acknowledges the broad language of ORS 419C.610, but argues that the statute's context-which youth contends includes criminal sentencing laws and the policy behind the juvenile code-implicitly limits the statute by prohibiting the type of post-termination modification that the juvenile court ordered here.
To construe ORS 419C.610, we must discern as best we can the legislature's intent, giving primary weight to the statute's text and context, including related statutes, followed by legislative history and, if necessary, other interpretive tools. State v. Gaines , 346 Or. 160, 171-72, 206 P.3d 1042 (2009). Neither party has offered legislative history, and we have found none that is helpful.
*575 Beginning with the text, ORS 419C.610 provides:
"(1) Except as provided in ORS 419C.613, 419C.615 and 419C.616, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct.
"(2) When the court modifies or sets aside an order of jurisdiction based on a petition alleging that a youth offender has committed an act that would constitute a sex crime, as defined in ORS 163A.005, if committed by an adult, the court shall make written findings stating the reason for modifying or setting aside the order."
Thus, with limited exceptions not applicable here,[7] the statute gives the juvenile court *1049 broad discretion to determine the procedures that it will follow when considering a modification under ORS 419C.610 -"such notice and *** hearing as the court may direct"-and does not expressly limit when or in what manner a court may modify its orders. Moreover, the legislature's inclusion of certain limitations on the court's authority under ORS 419C.610"demonstrates that the legislature knows how to create exceptions to broadly worded statutes when it so intends," and that the "omission of other exceptions to the juvenile court's authority *** presumably was purposeful." Tyree , 177 Or.App. at 193, 33 P.3d 729. By its terms, then, ORS 419C.610 strongly suggests that the court's authority is not limited in the manner youth contends.
We turn to the statute's context. Youth argues that, despite the statute's broad wording, various contextual clues demonstrate that the legislature intended to further limit the juvenile court's authority to act under ORS 419C.610. We disagree. Youth's argument relies on the premise that the legislature cannot have intended to provide the juvenile *576 court with carte blanche to impose new requirements on a youth offender after jurisdiction terminates. But, as we explain, the court did not "impose new requirements" in the manner that youth suggests. Accordingly, youth's arguments, and the statutes he offers as supporting context, are misplaced.
First, youth compares the juvenile court's action in this case to the revocation of probation after probation has expired in an adult criminal case. That comparison is inapt. Even assuming that the provisions of the criminal code can be read in pari materia with the juvenile code, they offer no guidance as to the juvenile court's authority to reinstate the obligation that youth provide a DNA sample, which does not constitute punishment and was not imposed as a sanction. Although compulsory DNA sampling is arguably invasive, our case law suggests that requiring an offender to provide a DNA sample is not punitive. For example, we reached an analogous conclusion in State ex rel Juv. Dept. v. Orozco , 129 Or.App. 148, 150, 878 P.2d 432 (1994), rev den , 326 Or. 58, 944 P.2d 947 (1997), in which the juvenile court required a youth to submit a blood sample for DNA sequencing after adjudicating the youth to have committed acts that would constitute first-degree rape. We rejected the youth's argument that the requirement constituted an unreasonable search or seizure in violation of the Fourth Amendment to the United States Constitution and Article I, section 9, of the Oregon Constitution. Id. Instead, we compared the required blood draw to routine fingerprinting, both of which were "performed for law enforcement purposes, specifically, to record the immutable characteristics of arrestees and offenders for use in the investigation of future crimes." Id. at 152, 878 P.2d 432.
We find similar support in cases involving ex post facto challenges to retroactively imposed obligations to provide DNA samples. For example, the Ninth Circuit has considered Oregon's statutory requirement in that context and concluded that it is not punitive. Rise v. State of Oregon , 59 F.3d 1556, 1562 (9th Cir. 1995), cert. den. , 517 U.S. 1160, 116 S.Ct. 1554, 134 L.Ed.2d 656 (1996). Moreover, that appears to be the conclusion of every court that has considered that issue. See State v. Banks , 321 Conn 821, 834 n. 7, 146 A.3d 1, 8 n. 7 (2016) (collecting cases).
*577 As a result, we disagree that the modification of youth's judgment resulted in "additional requirements" analogous to those imposed in probation revocation or modification proceedings. The court did not belatedly impose a suspended sentence or penalize youth for his post-adjudication behavior; it merely corrected what youth admits to have been an unlawful order, which itself implied that the conditions would remain deferred only "[i]f the youth successfully completes all conditions of probation[.]" Accordingly, statutes limiting a court's authority in such proceedings have no bearing here.
*1050 Youth next relies on the legislative declaration of purpose for the juvenile justice system, ORS 419C.001(1), which states that the system "shall provide a continuum of services that emphasize prevention of further criminal activity by the use of early and certain sanctions, reformation and rehabilitation programs and swift and decisive intervention in delinquent behavior." (Emphases added.) But, as we have just explained, the modification here is not a form of sanction or intervention, and it was not made in response to delinquent behavior. Thus, whatever bearing this provision may have in that context, it sheds no light on our construction of ORS 419C.610 here.
We find slightly better contextual guidance in the parallel juvenile dependency statute, ORS 419B.923. Both that statute and ORS 419C.610 were derived from a single statute that governed both dependency and delinquency judgments until the legislature separated the juvenile code into distinct chapters. See former ORS 419.529(1) (1991), repealed by Or. Laws 1993, ch. 33, § 373 ("Except as provided in this section, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."). In 2001, however, the legislature separately amended the dependency and delinquency modification provisions that had replaced the original statute. See Dept. of Human Services v. T. L. , 358 Or. 679, 697-99, 369 P.3d 1159 (2016) (describing the 2001 amendments in detail). ORS 419C.610 was amended to accommodate the post-adjudication relief process. In dependency proceedings, on the other hand, the legislature amended the parallel *578 provision to impose an express limitation not present in ORS 419C.610, requiring that a motion to modify or set aside an order "be made within a reasonable time." ORS 419B.923(3). While that distinction is, perhaps, of limited probative value, to the extent that we consider ORS 419C.923 relevant context in construing ORS 419C.610, it weighs against youth's argument that there is an implicit time limit under the latter statute.
Finally, youth argues that, under the final stage of our analytical framework, we should "resort to general maxims of statutory construction" to resolve the question of whether ORS 419C.610 allowed the juvenile court to amend its judgment. See Gaines , 346 Or. at 172, 206 P.3d 1042. Youth argues that we must interpret ORS 419C.610"consistently with the 'fundamental fairness' principles of due process," i.e. , that we should apply the canon of constitutional avoidance and interpret the statute "in such a manner as to avoid any serious constitutional problems." State v. Straughan (A147718) , 263 Or.App. 225, 234, 327 P.3d 1172 (2014) (internal quotation marks omitted).[8] Even assuming that we should reach that stage of statutory analysis, we find youth's arguments unavailing.
Youth argues that the modification was "fundamentally unfair," because it upset his "reasonable expectation of finality," and therefore violated his right to due process under the Fourteenth Amendment to the United States Constitution. That argument proceeds from the same faulty premise as his comparison to adult sentencing. As we have explained, the juvenile court did not increase the sanction that youth received for his actions. It vacated the unauthorized "deferral" of two mandatory, nonpunitive requirements, one of which was subsequently imposed anew on youth by the legislature. See 289 Or.App. at 570-72, 410 P.3d at 1046-47.
*579 Procedurally, youth received more process than was due. Because the fact of youth's adjudication is the only predicate for mandatory DNA sampling, he was not constitutionally entitled to a new hearing before that requirement could be imposed. Rise , 59 F.3d at 1563 ("Because the only criterion * * * for extracting blood is a conviction for a predicate offense, there would be little of substance to contest at any provided hearing."
*1051 ); see also State ex rel Juv. Dept. v. Mitchell , 130 Or.App. 134, 138 n. 5, 880 P.2d 958 (1994), aff'd by an equally divided court , 325 Or. 479, 940 P.2d 518, cert. den. , 522 U.S. 1004, 118 S.Ct. 578, 139 L.Ed.2d 416 (1997) (finding "no evidence that the blood draw and stored DNA profile will cause any additional labeling" of the youth offender beyond the stigma resulting from the adjudication itself and the requirement to register as a sex offender); cf. Conn. Dept. of Public Safety v. Doe , 538 U.S. 1, 7-8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003) (holding that no additional hearing was necessary to retroactively require sex offender registration, because the registration requirement "turn[ed] on an offender's conviction alone-a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest").
Youth's substantive due process argument fails as well. Although youth cites several federal decisions in support of his argument, the modification at issue here falls well short of the circumstances that those cases recognize as raising due process concerns. As those cases explain, "[o]nly in the extreme case can a court properly say that the later upward revision of a sentence, made to correct an earlier mistake, is so unfair that it must be deemed inconsistent with fundamental notions of fairness embodied in the Due Process Clause." DeWitt v. Ventetoulo , 6 F.3d 32, 35 (1st Cir. 1993), cert. den. , 511 U.S. 1032, 114 S.Ct. 1542, 128 L.Ed.2d 193 (1994) (finding such a violation where the offender had been mistakenly released on parole for eight months and was returned to prison in circumstances suggesting bad faith); see Hawkins v. Freeman , 195 F.3d 732, 746 (4th Cir. 1999) (finding no violation where offender had been mistakenly released on parole for 20 months before being returned to prison). Because our construction of ORS 419C.610 does not give rise to the constitutional concerns that youth envisions, our interpretive rules do not require us to construe the statute differently.
*580 In sum, the text of ORS 419C.610 in context authorized the court's action here, and due process concerns do not dictate a different interpretation of that statute. Accordingly, the juvenile court did not err in modifying the erroneous term in youth's delinquency judgment to require him to submit a DNA sample.
Affirmed.

As noted, ORS 419C.610(1) allows a juvenile court to "modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

In 2015, legislative counsel renumbered the statutes in former ORS chapter 181 and placed those governing sex offender registration in ORS chapter 163A.

ORS 419A.200(1) provides that "any person *** whose rights or duties are adversely affected by a judgment of the juvenile court may appeal therefrom." A "judgment" in this context includes a "final order adversely affecting the rights or duties of a party and made in a proceeding after judgment." ORS 419A.205(1)(d).

ORS 419C.005(1) gives the juvenile court "exclusive original jurisdiction in any case" involving a minor who has committed an act that would be a crime if committed by an adult. The juvenile court's "jurisdiction over a person under this section" continues until the court dismisses the delinquency petition or waives the youth to be prosecuted as an adult; transfers jurisdiction to another juvenile court; enters an order terminating jurisdiction; places the youth under the jurisdiction of the Psychiatric Security Review Board; or the youth reaches age 25. ORS 419C.005(4)(a)-(e).

In 2004, sex offender registration was required by either former ORS 181.595 (2003) or former ORS 181.596 (2003), depending on the circumstances of the offender's supervision and confinement. In 2011, the legislature amended those statutes, see Or. Laws 2011, ch. 271, §§ 1, 11-12, and placed the registration requirements for juvenile offenders in former ORS 181.609 (2011), renumbered as former ORS 181.809 (2013), amended by Or. Laws 2015, ch. 820, § 8, renumbered as ORS 163A.025 (2015), amended by Or. Laws 2016, ch. 95, § 1.

As we explain below, youth compares the modification proceeding in his case with the revocation or modification of probation in an adult criminal case. In light of that comparison, we understand "additional requirements" as he uses that term to mean additional punitive or remedial measures.

The statutes listed in paragraph (1) require notice and a hearing if the court's action would affect the custody or placement of a youth offender, ORS 419C.613, and govern the juvenile equivalent of post-conviction relief, ORS 419C.615 and ORS 419C.616. Youth has not argued that the juvenile court violated the findings requirement in paragraph (2). We also note that, in ORS 419C.617, the legislature established a two-year limitations period for a person seeking post-adjudication relief on the grounds in ORS 419C.615, if the person seeking relief "is over 18 years of age and is no longer within the jurisdiction of the juvenile court." That is the only explicit time limit for ORS 419C.610 and the related post-adjudication relief statutes.

The state argues that youth's due process claim is unpreserved, because youth's sole pertinent argument to the juvenile court was that "[the] Juvenile Court is a court of equity and fundamental fairness requires not allowing the proposed modification to the amended commitment order." (Emphasis added.) We tend to agree that the single reference to "fundamental fairness" would not have informed the juvenile court or the state that youth had raised a due process objection. However, because youth explicitly asks us to apply the canon of constitutional avoidance, we consider his due process argument in that context.