Argued and submitted July 7, 2021; reversed and remanded for reconsideration of disposition, otherwise affirmed April 20, 2022

In the Matter of B. Y.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

B. Y.,
*Appellant.*

Columbia County Circuit Court
19JU00173; A172581

510 P3d 247

Youth appeals from a dispositional judgment committing him to the Oregon Youth Authority for placement in a youth correction facility for one year, to be served consecutively to his commitment from prior cases. Youth makes two assignments of error. First, he assigns error to the trial court's order to run the commitment consecutively to his commitment from prior cases. Second, youth requests plain-error review of the juvenile court's imposition of a one-year commitment when the statutory maximum was 364 days. ORS 419C.501(1)(d). *Held*: The juvenile code does not, as written, authorize the imposition of consecutive commitments; thus, the juvenile court erred when it ordered that youth's commitment run consecutive to his prior commitment. Additionally, the Court of Appeals would accept the state's concession and exercise its discretion to correct the plainly erroneous imposition of a one-year commitment.

Reversed and remanded for reconsideration of disposition; otherwise affirmed.

Ted E. Grove, Judge.

Christa Obold Eshleman argued the cause for appellant. Also on the brief was Youth, Rights & Justice.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before James, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded for reconsideration of disposition; otherwise affirmed.

Lagesen, C. J., concurring in part, dissenting in part.

## KAMINS, J.

Youth appeals from a dispositional judgment committing him to the Oregon Youth Authority (OYA) for placement in a youth correction facility for one year, to be served consecutively to his commitment from prior cases. Youth makes two assignments of error. First, he assigns error to the trial court's order to run the commitment consecutively to his commitment from prior cases. Second, he assigns error to the trial court's imposition of a one-year commitment when the statutory maximum is 364 days. We conclude that a juvenile court does not have authority to impose consecutive commitments and that the imposition of a one-year commitment amounted to plain error. We reverse and remand for the juvenile court to reconsider its disposition and otherwise affirm.

In 2017, youth was committed to the custody of the OYA for three and a half years in a combined disposition and spent most of his time committed to a youth correction facility. At one point, youth was paroled and subsequently ran away from his placement. When police attempted to apprehend him, he refused to follow the officer's order to stop and lie on the ground and was then charged with conduct that, if committed by an adult, would constitute the offense of interfering with a peace officer, ORS 162.247, a Class A misdemeanor. Youth admitted to the charge, and in October 2019, the juvenile court ordered him to serve a one-year commitment to OYA, to be served consecutively to the 2017 commitment, which was set to end in November 2020.

Youth timely appealed, assigning error to the juvenile court's order imposing the commitment consecutively to his commitment from prior cases and to the court's imposition of a one-year commitment for a Class A misdemeanor.

By way of background, juvenile delinquency proceedings consist of two stages that are roughly comparable to conviction and sentencing in adult criminal cases. *State v. Barrett*, 350 Or 390, 401, 255 P3d 472 (2011). The first stage is the adjudication, where the juvenile court determines whether a youth has committed an act that would be a crime if committed by an adult. *Id.* The second is the juvenile court's determination of the consequences that should follow

from the adjudication, which is called the disposition. *Id.* at 402. ORS 419C.501(1) outlines durational limits on different types of dispositions, one of which includes commitment to the OYA, which is the type of disposition youth in this case received. Under ORS 419C.501(1) and (2), a juvenile court disposition can be for an indefinite period, but, similarly to adult sentences of incarceration, the statute imposes limitations on commitments and periods of institutionalization. It is that limitation that we address in this opinion.

Youth argues that, because the juvenile code is *sui generis*, the court's dispositional authority must be explicit. *See Kelley v. Gibson*, 184 Or App 343, 348, 56 P3d 925 (2002) ("Because proceedings under the juvenile code are *sui generis*, a juvenile court's actions must be authorized by the statutes that created it."); *Webster's Third New Int'l Dictionary* 2286 (unabridged ed 2002) (defining *sui generis* as "of its own kind : constituting a class alone : unique, peculiar"). Specifically, youth notes that, under the current version of the statute that governs maximum dispositions, ORS 419C.501, there is no authority granting a juvenile court permission to impose consecutive commitments. Because no authority outside the juvenile code can be interpreted as authorizing consecutive commitments, youth contends that to grant that authority would be contrary to the rehabilitative purpose of the juvenile code.

The state concedes that there is no express statutory authority for consecutive commitments but argues that the legislature's silence on that issue does not mean that the legislature intended for juvenile courts to have no authority to do so. The state points out that we have already interpreted the juvenile code to authorize consecutive commitments under a prior version of ORS 419C.501, *former* ORS 419.511 (1971), *repealed by* Or Laws 1993, ch 33, § 373. *State ex rel Juv. Dept. v. T.*, 27 Or App 407, 409, 556 P2d 146 (1976). Citing legislative history that postdates that case, the state argues that there was no legislative intent to remove that authority with any of the subsequent changes made to the juvenile code. Additionally, even absent legislation permitting the imposition of consecutive commitments, the state maintains that it has long been settled law that trial courts have inherent authority to impose consecutive sentences in

the adult context, and the reasoning applies with equal force to juvenile courts. *See, e.g.*, *State v. Jones*, 250 Or 59, 61, 440 P2d 371 (1968); *State v. Norman*, 71 Or App 389, 392, 692 P2d 665 (1984), *rev den*, 299 Or 31, *cert den*, 471 US 1020; 471 US 1139 (1985).

We review questions of statutory construction for errors of law. *State v. E. C.-P.*, 289 Or App 569, 572, 410 P3d 1045 (2017). When we interpret a statute, "[w]e ascertain the legislature's intentions by examining the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011) (citing *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009)). "In the absence of any evidence to the contrary, we assume that the legislature intended to give those words their 'plain, natural, and ordinary meaning.'" *State v. Ziska/Garza*, 355 Or 799, 804, 334 P3d 964 (2014) (quoting *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993)).

The relevant language in the current version of ORS 419C.501, the statute governing limitations on the duration of commitments, prescribes that "the period of institutionalization or commitment may not exceed" and then lists out the maximums based on the category of offense.[1] The plain

---

[1] ORS 419C.501 provides:

"(1) The court shall fix the duration of any disposition made pursuant to this chapter and the duration may be for an indefinite period. Any placement in the legal custody of the Department of Human Services or the Oregon Youth Authority under ORS 419C.478 or placement under the jurisdiction of the Psychiatric Security Review Board under ORS 419C.529 shall be for an indefinite period. However, the period of institutionalization or commitment may not exceed:

"(a) The period of time specified in the statute defining the crime for an act that would constitute an unclassified misdemeanor if committed by an adult;

"(b) Thirty days for an act that would constitute a Class C misdemeanor if committed by an adult;

"(c) Six months for an act that would constitute a Class B misdemeanor if committed by an adult;

"(d) Three hundred sixty-four days for an act that would constitute a Class A misdemeanor if committed by an adult;

"(e) Five years for an act that would constitute a Class C felony if committed by an adult;

text is silent on how to deal with a situation where a youth has been adjudicated for multiple offenses.

Our statutory analysis is also informed by cases previously construing the relevant statute or its predecessors. *Cloutier*, 351 Or at 100. A previous version of the statute implicitly authorized consecutive dispositions for separate offenses. *T.*, 27 Or App at 409 (citing *former* ORS 419.507(2) (1975), *repealed by* Or Laws 1993, ch 33, § 373, and *former* ORS 419.511(1) and (3) (1971)). The statute that governed maximum dispositions in that case, *former* ORS 419.511 (1971), provided that the duration of disposition "shall not exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult." At the time that *T.* was decided, courts handling adult criminal cases had inherent authority to impose consecutive sentences. *Jones*, 250 Or at 61. Therefore, a youth's maximum disposition would have included consecutive dispositions, as that was the law governing adults at that time. *T.*, 27 Or App at 409.

*Former* ORS 419.511 (1971) was redesignated ORS 419C.501 in 1993, but the language stating that the period of any disposition "shall not exceed the maximum period of institutionalization or commitment authorized if the act had been committed by an adult" remained the same. Or Laws 1993, ch 33, § 246. ORS 419C.501 was again amended in 1995 and the language linking maximum dispositions with adult maximums was again unaltered. Or Laws 1995, ch 422, § 85. That language was finally removed in 1999 and replaced with the current language specifying maximum commitment periods based on the category of offense, with

"(f) Ten years for an act that would constitute a Class B felony if committed by an adult;

"(g) Twenty years for an act that would constitute a Class A felony if committed by an adult; and

"(h) Life for a young person who was found to have committed an act that, if committed by an adult would constitute murder or any aggravated form of murder under ORS 163.095, 163.107 or 163.115.

"(2) Except as provided in subsection (1)(h) of this section, the period of any disposition may not extend beyond the date on which the young person or adjudicated youth becomes 25 years of age."

only minor subsequent alterations. Or Laws 1999, ch 964, § 1.[2]

The state contends that the legislative history of the 1999 amendments to ORS 419C.501 reveals that the legislature's removal of that language did not reflect an intent to strip juvenile courts of the dispositional authority that we recognized in *T.* We agree that the legislative history does not reveal that specific intent. Rather, the change was inspired by a pending Court of Appeals case posing the question whether "the maximum time the youth could serve [was] limited to the time an adult would actually serve if sentencing guidelines were applied." Exhibit B, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3047, May 4, 1999 (testimony of Larry Oglesby, representing Oregon Juvenile Department Directors' Association). The bill's work group was concerned that "[t]hat interpretation would mean that in some cases youth would have to be released back into the community prematurely[.]" *Id.* According to legislative testimony, the aim of the amendment was to "restate[] the time limit on the period of institutionalization or commitment in terms of a specific number of years, rather than having it tied to the length of time an adult could serve for those crimes." *Id.*; *see also* Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 3047, May 4, 1999, Tape 178, Side A (statement by Larry Oglesby, representing Oregon Juvenile Department Directors' Association) (stating that the purpose of the amendment was to "clarify that the time that a youth can be committed to a youth correction facility is a specific length of time" as opposed to the time that an adult could serve for the same offense, "which could be interpreted to be reduced by sentencing guidelines, which would be a shorter period of time"). The goal was for the amendment to "make certain that the practice that has been in place successfully for decades would continue." Exhibit B, House Committee

---

[2] *Former* ORS 419.511 (1971) and, prior to 1999, ORS 419C.501 referred only to "dispositions" in the juvenile context. In 1999, ORS 419C.501 introduced language referring to maximum "commitment" periods and differentiated those from dispositions. Or Laws 1999, ch 964, § 1. In this opinion, when referring to the statutes before the 1999 amendment, we use the term dispositions. When referring to versions of ORS 419C.501 postdating 1999, our terminology reflects the addition of the term commitments. Due to the fact that the disposition in this case is a commitment to the OYA, we limit our discussion to the juvenile court's authority to impose consecutive commitments.

on Judiciary, Subcommittee on Criminal Law, HB 3047, May 4, 1999 (testimony of Larry Oglesby, representing Oregon Juvenile Department Directors' Association).

Although the legislature did not specifically intend to remove a juvenile court's authority to impose consecutive commitments with HB 3047 in 1999, that does not answer the question of what the legislature understood its new text to mean in 1999, given the significant intervening changes to the way that criminal sentencing occurred. Indeed, the legal premise of our interpretation that the previous version of the juvenile statute allowed for consecutive dispositions, which was drawn from criminal sentencing, no longer existed by the time the legislature amended ORS 419C.501. That earlier interpretation was based on the fact that adult criminal courts had inherent authority to impose sentences consecutively, an authority the legislature limited with the codification of ORS 137.123 in 1987. Or Laws 1987, ch 2, § 12; ORS 137.123(5);[3] *see also State v. Crotsley*, 308 Or 272, 277 n 5, 779 P2d 600 (1989) ("[T]he legislature took care to limit the circumstances in which the additional convictions authorized by ORS 161.062 could be the basis of consecutive sentencing."). With the enactment of ORS 137.123, "the legislature intended to eliminate any inherent authority that the court might have with respect to consecutive sentences." *State v. Trice*, 146 Or App 15, 21, 933 P2d 345, *rev den*, 325 Or 280 (1997) (internal quotation marks omitted); *see also State v. Brooks*, 187 Or App 388, 399, 67 P3d 426, *rev den*,

---

[3] ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct *only if* the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

(Emphasis added.)

335 Or 578 (2003) ("We agree with defendant that the courts' authority to impose consecutive sentences—or PSRB terms—is now exclusively statutory, not inherent." (Internal quotation marks omitted.)).[4]

We are thus faced with an issue of ambiguous legislative intent. On the one hand, the legislative history of HB 3047 does not suggest that the legislature intended, with that bill, to strip a juvenile court of any of its dispositional authority. On the other hand, the legislature had previously enacted ORS 137.123, which reflected an intent to impose limitations on a court's authority to impose consecutive sentences in the adult context. The text, context, and legislative history do not resolve the question before us.

If the correct interpretation cannot be discerned from the text, context, and legislative history of the statute, we turn to canons of construction "to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172. One such canon instructs us to attempt to ascertain the result the legislature would have most likely wanted had it thought of the specific issue. *See State v. Rodriguez*, 217 Or App 24, 34, 175 P3d 471 (2007) ("[W]hen all else fails, we attempt to do what the legislature most likely would have done had it thought of the specific issue."). As discussed above, the legislature previously directly linked a juvenile court's dispositional authority to that of an adult court. *See former* ORS 419.511(1) (1971) (explicitly linking the maximum dispositions for juveniles to the maximum sentences for adults). It was that linkage—and the inherent authority of adult courts—that formed the basis for the juvenile court's previous authority to authorize consecutive dispositions. The legislature has since chosen to limit an adult court's inherent authority *and* break the link between juvenile commitments and adult sentences.[5] Thus, it seems that, if confronted with the question whether a juvenile court retains unlimited

───────────────

[4] Although we have not had occasion to consider the impact of the legislature's decision to limit the inherent authority of adult courts on the juvenile court's ability to impose consecutive commitments, we have concluded that the consecutive sentence statute itself does not apply in the juvenile context. *Trice*, 146 Or App at 20-21.

[5] As the legislative history demonstrates, the legislature's eventual decision to break that link was unrelated to consecutive sentencing or inherent authority—

authority to impose consecutive commitments, the answer would be "no."

Additionally, we know that part of the reason the legislature limited the inherent authority of adult courts with regard to sentencing was a result of a different legislative decision: to increase the number of convictions that a defendant could receive for the same criminal episode. *See former* ORS 161.062 (1985), *repealed by* Or Laws 1999, ch 136, § 1; ORS 161.067 (known as the "anti-merger statute"). The anti-merger statute instructs courts to record more convictions for conduct that previously would have "merged" into a single conviction so that a defendant's records more accurately reflect the nature of their criminal conduct. *See Crotsley*, 308 Or at 276-77 ("The proponents of [the anti-merger statute] clearly intended that criminal records accurately reflect all crimes actually committed and that a person who commits multiple crimes by the same conduct or during the same criminal episode should have a criminal record reflecting each crime committed rather than only a single conviction which would not accurately portray the nature and extent of that person's conduct."). However, in so doing, the legislature "took care to limit the circumstances in which the additional convictions authorized by ORS 161.062 could be the basis of consecutive sentencing." *See id.* at 277 n 5. Those additional statutory violations authorized by the anti-merger statute apply in juvenile proceedings. *See State v. K. R. S.*, 298 Or App 318, 331, 449 P3d 511 (2019) (holding that principles of merger apply in the juvenile context). Therefore, the same concerns that animated the legislative changes to consecutive sentencing in the adult context would apply to juvenile proceedings—to ensure that a youth's record accurately reflects the nature of the criminal conduct but not allow those additional violations to serve as a basis for consecutive commitments. That parallel further reinforces the conclusion that the legislature would not have intended for juvenile courts to retain unlimited discretionary authority to impose consecutive commitments.

Finally—and critically—the legislative purpose of the juvenile code is reformation, not punishment. *See* ORS

---

it was to ensure that statutory maximums, rather than the sentencing guidelines, applied to juvenile commitments.

419C.001(1) ("The system is founded on the principles of personal responsibility, accountability and reformation within the context of public safety and restitution to the victims and to the community."); *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 574, 857 P2d 842 (1993) ("Juvenile courts are concerned with rehabilitation, not punishment."). "[W]hen a specific issue is not addressed clearly in a statute or its legislative history, we use the broader purpose of the statute as a guide in our attempt to discern what the legislature would have intended had it considered it." *Angle v. Board of Dentistry*, 294 Or App 470, 479, 431 P3d 447 (2018) (internal quotation marks omitted). It is irreconcilable with the rehabilitative and reformative purposes of the juvenile code to increase a juvenile's maximum exposure to commitment time while limiting that exposure in adult courts.

We conclude by acknowledging that the dissent's view is entirely plausible given that several different statutes authorize juvenile courts to exercise broad discretion. However, when it comes to the duration of commitments, the legislature explicitly limited discretion and delineated precise terms of commitment directly connected to the specific offense. ORS 419C.501(1). Although, as the dissent correctly points out, our interpretation displaces the status quo, the "status quo" following the 1999 amendments was based on habit and inertia. 319 Or App at 222 (Lagesen, C. J., concurring in part, dissenting in part). Juvenile practice had evolved in a certain manner, and, as is often the case, little thought was given to how that practice was grounded in statute. Post-1999, it simply wasn't. When the legislature chose to amend the statute to specify particular terms of commitments for particular offenses, the act of commitment stopped being governed by discretionary or inherent authority. If the legislature meant to grant juvenile courts the discretion to impose consecutive commitments at that point, it needed to say so.

We are unable to confidently ascertain the legislature's policy decision—if it has made one at all—regarding a juvenile court's authority to impose consecutive commitments. *See State v. Walker*, 356 Or 4, 22-23, 333 P3d 316 (2014) ("[O]ur role is not to draft or revise the laws, or to refine the policy reflected in the law."). Because the juvenile

code does not, as written, authorize the imposition of consecutive commitments, the juvenile court erred when it ordered that youth's commitment run consecutive to his prior commitment.

Youth next assigns as plain error the juvenile court's imposition of a one-year commitment when the statutory maximum was 364 days. ORS 419C.501(1)(d). Youth acknowledges that he did not preserve that argument but asks us to exercise our discretion to review the claim as plain error. ORAP 5.45(1). The state concedes the error. We agree with and accept the state's concession, and we exercise our discretion to correct the error because it can be corrected with a minimum of judicial resources and the state has no interest in a youth serving an unlawful disposition. *See State v. Ramos*, 254 Or App 748, 749, 295 P3d 176 (2013) (exercising its discretion in similar circumstances).

Reversed and remanded for reconsideration of disposition; otherwise affirmed.

**LAGESEN, C. J.,** concurring in part, dissenting in part.

I agree with the majority's resolution of youth's second assignment of error; however, with respect to the first assignment, I would affirm the judgment of the juvenile court. Although the majority opinion's construction of the statutes is a reasonable one, I would reach a different conclusion based on the structure and purpose of the juvenile code.

As ably explained by the majority opinion, the juvenile code does not expressly address how long a juvenile court may commit a youth to the Oregon Youth Authority when the youth is found to be within the juvenile court's delinquency jurisdiction for conduct that, if committed by an adult, would constitute multiple criminal offenses. For several reasons, I would conclude that, in such circumstances, a juvenile court may impose consecutive commitment periods.

As an initial matter, the structure of ORS 419C.501 suggests that juvenile courts have broad discretion to determine the duration of a commitment period for offenses other

than aggravated murder. It provides that "[t]he court shall fix the duration of any disposition made pursuant to this chapter and the duration may be for an indefinite period."

The text of the statute suggests only two limits on that discretion. First, a commitment to the Oregon Youth Authority cannot extend beyond a youth's twenty-fifth birthday. ORS 419C.501(2). Second, the statute provides the maximum length of commitment for any given "act":

"However, the period of institutionalization or commitment may not exceed:

"(a)   The period of time specified in the statute defining the crime for an act that would constitute an unclassified misdemeanor if committed by an adult;

"(b)   Thirty days for an act that would constitute a Class C misdemeanor if committed by an adult;

"(c)   Six months for an act that would constitute a Class B misdemeanor if committed by an adult;

"(d)   Three hundred sixty-four days for an act that would constitute a Class A misdemeanor if committed by an adult;

"(e)   Five years for an act that would constitute a Class C felony if committed by an adult;

"(f)   Ten years for an act that would constitute a Class B felony if committed by an adult;

"(g)   Twenty years for an act that would constitute a Class A felony if committed by an adult[.]"

ORS 419C.501(1).

That structure suggests that a juvenile court, in determining the appropriate disposition for a youth who has been adjudicated delinquent for multiple acts, has discretion to determine the appropriate length of the commitment period in view of the factors identified in ORS 419C.411 (governing dispositions) and ORS 419C.478 (governing commitments to the Oregon Youth Authority), so long as that period (1) does not extend past the youth's twenty-fifth birthday or (2) result in the period of commitment associated with a particular act being longer than what is authorized for

that particular act. In other words, it is a structure that would appear to allow for the court to commit a youth to the Oregon Youth Authority for a separate and distinct period of time for each act the youth was adjudicated to have committed, if and when the factors governing a juvenile court's dispositional determinations weigh in favor of doing so.

ORS 419C.411 supports that understanding. It, too, indicates a legislative intention to grant a juvenile court wide discretion to fashion a disposition that best addresses the circumstances of a particular youth offender. It provides, in relevant part:

"(3)   Except as otherwise provided in subsections (6) and (7) of this section, in determining the disposition of the case, the court shall consider each of the following:

"(a)   The gravity of the loss, damage or injury caused or attempted during, or as part of, the conduct that is the basis for jurisdiction under ORS 419C.005;

"(b)   Whether the manner in which the adjudicated youth engaged in the conduct was aggressive, violent, premeditated or willful;

"(c)   Whether the adjudicated youth was held in detention under ORS 419C.145 and, if so, the reasons for the detention;

"(d)   The immediate and future protection required by the victim, the victim's family and the community; and

"(e)   The adjudicated youth's juvenile court record and response to the requirements and conditions imposed by previous juvenile court orders.

"(4)   In addition to the factors listed in subsection (3) of this section, the court may consider the following:

"(a)   Whether the adjudicated youth has made any efforts toward reform or rehabilitation or making restitution;

"(b)   The adjudicated youth's educational status and school attendance record;

"(c)   The adjudicated youth's past and present employment;

"(d)   The disposition proposed by the adjudicated youth;

"(e)   The recommendations of the district attorney and the juvenile court counselor and the statements of the victim and the victim's family;

"(f)   The adjudicated youth's mental, emotional and physical health and the results of the mental health or substance abuse treatment; and

"(g)   Any other relevant factors or circumstances raised by the parties."

ORS 419C.411; *see* ORS 419C.478(3)(e) (explaining that the factors identified in ORS 419C.411 must be considered in determining whether a youth should be committed to the Oregon Youth Authority). Those considerations suggest that the legislature intended for juvenile courts to have wide latitude to fashion an appropriate term of commitment for a particular youth, something that would be inhibited if a juvenile court is not permitted to impose a separate and distinct period of commitment for each act committed by a youth. As the state points out, this case illustrates the point. Youth committed the act at issue while he was in the custody of the Oregon Youth Authority because of a previous delinquency adjudication. The record indicated that youth was not making much progress toward reforming his conduct, something that caused the state to argue for, and the juvenile court to conclude, that his existing period of commitment should be extended by one year. To read the statutes to prohibit this practice would risk hampering the delinquency code's objective of rehabilitating youth offenders so they do not become adult offenders.

Finally, the fact that we previously have held that juvenile courts have this authority weighs in favor this of conclusion. Although *State ex rel Juv. Dept. v. T.*, 27 Or App 407, 556 P2d 146 (1976), is not controlling on the question, given the statutory amendments, it suggests that Oregon juvenile courts long have been understood to have this authority. Absent a clear indication from the legislature that it intended to displace that status quo, I would conclude that we should maintain it.

Respectfully, I concur in part and dissent in part.