AOYAGI, J.
*688 Defendant was convicted of multiple crimes, including three counts of felony fourth-degree assault (Counts 3, 4, and 7), after a series of incidents involving his girlfriend, J. The three assault convictions were elevated to felonies on the basis that defendant knew that J was pregnant at the time of the assaults. On appeal, defendant challenges the assault convictions, raising two assignments of error. We reject defendant's second assignment of error without written discussion. In his first assignment of error, defendant argues that the trial court erred in denying his motion for judgment of acquittal, because the evidence was speculative as to whether J was actually pregnant at the time of each assault. For the reasons that follow, we agree. We therefore reverse defendant's felony convictions on Counts 3, 4, and 7; remand for entry of misdemeanor convictions on those counts; and otherwise affirm.
In reviewing the denial of a motion for judgment of acquittal, we view the facts in the light most favorable to the state. State v. Long , 286 Or. App. 334, 335, 399 P.3d 1063 (2017). Applying that standard, the relevant facts are as follows.
Defendant and J began dating in the summer. J moved in with defendant in mid-to-late July, and they discussed wanting J to become pregnant. J became pregnant in the first half of August, as confirmed by a home pregnancy test and an ultrasound on August 18. Defendant knew about the pregnancy at that time.
On August 28, defendant woke J by deploying a taser to her leg, which caused her pain and a welt on her leg. J described the pain as eight or nine on a scale of 10.
On September 7, defendant and J got into an altercation at a neighbor's property. At one point, defendant hit J in such a way that her head bounced off his truck window frame, which caused J to have a headache and a small indentation on her head. Later, as defendant was sitting in the driver's seat, J stood on the running board, holding onto the door and talking to him. Defendant began driving. They were in a field, and J does not know how fast they were *689 going. Defendant opened and closed the door briefly, which caused J to lose her grip and fall off the truck. J lost consciousness. When she came to, J felt sharp stomach pains. Later, as J was trying to take some things out of the *553 truck, defendant hit her around the head multiple times with an open palm. J experienced "pains in [her] stomach" and "a really bad headache" that night.
On September 11, defendant and J got into an argument at a motel. During the argument, defendant hit J in the stomach, which caused her pain of an unspecified duration. J described the pain as seven or eight on a scale of 10. Defendant also obstructed J's breathing by covering her mouth and nose with his hand, and he elbowed J in the head. J called the police, and defendant was arrested.
Defendant was charged with numerous crimes relating to his conduct toward J. The only relevant charges for purposes of appeal are Counts 3, 4, and 7, all of which charged felony fourth-degree assault, ORS 163.160. Count 3 pertains to the incident on August 28. Count 4 pertains to the incident on September 7. Count 7 pertains to the incident on September 11. All three counts were charged as felonies pursuant to ORS 163.160(3)(d), which elevates fourth-degree assault from a Class A misdemeanor to a Class C felony when "[t]he person commits the assault knowing that the victim is pregnant."
At defendant's trial, J testified regarding the charged incidents. She also testified regarding her pregnancy, which did not go to term. According to J, she never gave birth; she testified that, at a follow-up medical appointment that occurred sometime between September 12 and October 3, no fetal heartbeat was detected.
After the close of the state's evidence, defendant moved for a judgment of acquittal on the felony assault counts. As relevant here, defendant argued that the evidence was insufficient to prove that J was pregnant when the assaults occurred, in which case the state could not establish that he knew that she was pregnant. The trial court denied the motion. The court did not explain its ruling, except to say that it was viewing the evidence in the light most favorable to the state.
*690 Defendant was convicted on Counts 3, 4, and 7 (as well as other counts). On appeal, he assigns error to the denial of his motion for judgment of acquittal.
In reviewing the denial of a motion for judgment of acquittal, we "determine whether a rational factfinder, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." State v. Miller (A134139) , 226 Or. App. 52, 55, 202 P.3d 921 (2009) (emphasis in original). Defendant challenges the sufficiency of the evidence as to only one element of the felony assault charges: defendant's knowledge that the victim was pregnant. As to each count, if the evidence was insufficient to prove that allegation, defendant could have been convicted of a misdemeanor but not a felony.
As noted, under ORS 163.160(3)(d), fourth-degree assault is a felony, rather than a misdemeanor, if "[t]he person commits the assault knowing that the victim is pregnant." The plain language of ORS 163.160(3)(d) thus requires two facts to exist at the time of an assault for it to be a felony: (1) that the victim "is" pregnant, and (2) that the assailant "know[s]" that.[1] For purposes of ORS 163.160 (3)(d), it therefore was not enough for the state to prove that defendant believed that J was pregnant on each of the three dates in question. Nor was it enough for the state to prove that J could have been pregnant on those dates. The state had to prove that J was actually pregnant on each date to prove felony assault under ORS 163.160(3)(d).
Defendant argues on appeal that the evidence was insufficient to establish that J was pregnant on August 28 (for Count 3), September *554 7 (for Count 4), or September 11 (for Count 7). In response, the state does not contest that it had to prove that J was actually pregnant on each date. Rather, *691 the state asserts that the evidence was sufficient to do so. It posits three alternative legal theories. First, the state argues that the absence of a fetal heartbeat at J's follow-up appointment does not establish that the pregnancy had ended. Second, the state argues that, because J's pregnancy was confirmed on August 18, a factfinder could reasonably infer "that she continued being pregnant until it was known otherwise," i.e. , until termination was confirmed. Third, the state argues that "a rational factfinder could infer from the facts that a miscarriage occurred following a painful assault to the victim's abdomen" on September 11 (the third assault).
With respect to the state's first argument, the state points out that J never used the word "miscarriage" in her testimony. She never used the word "terminated" either. Nonetheless, the only reasonable inference that can be drawn from J's testimony is that her pregnancy did end and that she learned of that fact at her follow-up medical appointment in the latter half of September or early October. The prosecutor first asked J whether she "ultimately [gave] birth to a child," to which J responded "no." The prosecutor then asked J "what happened during [her] pregnancy," to which J responded, "I went back for a follow-up and there was no heartbeat." By reference to other events, J was able to identify the date of that appointment as being sometime after September 11 and before October 4. Although the prosecutor's questions were phrased somewhat indirectly, the import of J's answers is clear, and the state does not plausibly explain how that testimony allowed a reasonable inference that J was still pregnant at the time that no heartbeat was detected. We therefore reject the state's first argument.
We also reject the state's second and third arguments, which are closely related, and both of which turn on what constitutes a reasonable inference. In considering the evidence against a criminal defendant, a factfinder may draw any reasonable inferences in the state's favor, including from circumstantial evidence, and we view the evidence in that manner for purposes of reviewing the denial of a motion for judgment of acquittal. State v. Lupoli , 348 Or. 346, 366, 234 P.3d 117 (2010). Moreover, if established facts can support "multiple reasonable inferences," it is for the factfinder to decide which inference to draw.
*692 State v. Bivins , 191 Or. App. 460, 467, 83 P.3d 379 (2004). Speculation is different than inference, however, and the line between the two "is drawn by the laws of logic." Id. (citation omitted). That the historical facts make something possible is not enough to give rise to an inference. It is when there is a "logical probability that an ultimate fact will follow a stated narrative or historical fact" that "the jury is given the opportunity to draw a conclusion because there is a reasonable probability that the conclusion flows from the proven facts." Id .
In this case, J became pregnant sometime in the first half of August, the pregnancy was confirmed on August 18, and the loss of the pregnancy was confirmed a little over three to six weeks later, at a medical appointment that took place sometime between September 12 and October 3. From those facts alone, it would be entirely speculative to say that J was or was not pregnant on August 28, September 7, or September 11. The pregnancy could have terminated at any time between August 18 and October 3, and the "laws of logic" are of no assistance in pinning down the date.
The other evidence admitted at defendant's trial also was of little assistance in pinning down the date. J testified that she had morning sickness at some point, but there was no indication when that occurred. There was no evidence that J experienced any other signs or symptoms of pregnancy-or a cessation of such signs or symptoms. J did not testify to having experienced bleeding or any other event that she perceived as a miscarriage. There was no indication as to what spurred the medical appointment at which no fetal heartbeat was detected, except that it was a "follow-up" appointment. The state offered no medical evidence regarding the likely timing of termination, symptoms of miscarriage in early pregnancy, or whether particular incidents could have or were likely *555 to have triggered a miscarriage at that stage of pregnancy.
The state's second and third arguments confuse possibility with reasonable inference. Whether a woman is pregnant at a given time is a question of fact. If the only evidence is that someone was pregnant on a given date and was not pregnant six weeks later, it is speculation, not inference, to say that she was pregnant every day in between. Cf.
*693 Statev. Hiner , 269 Or. App. 447, 448, 345 P.3d 478 (2015) (error to deny motion for judgment of acquittal on charge of failure to register as a sex offender, where the defendant was required to register within 10 days of moving to a new residence, and there was evidence that he left a homeless shelter on a certain date and was arrested 16 days later, but there was no evidence of his whereabouts in between).
The state's second argument seeks, in effect, to create a legal fiction, by which a woman with a confirmed pregnancy remains pregnant until, as the state puts it, something "compels" a finding of the cessation of pregnancy (such as medical confirmation of termination)-regardless of when the woman in fact ceased to be pregnant. Given the state's burden of proof, we cannot adopt such a legal fiction. Cf. State v. Rainey , 298 Or. 459, 465, 693 P.2d 635 (1985) (the state may not rely on a rebuttable presumption in a criminal case, "because a presumption places the burden of persuasion on the criminal defendant in a manner inconsistent with the presumption of innocence and proof of guilt beyond a reasonable doubt"). It was the state's burden to prove that J was pregnant at the time of each assault , and it cannot shift that burden to defendant by proving that J was pregnant at some other time and then leaving it to defendant to prove that she was not pregnant when the assaults occurred. Otherwise, the state fails to explain how a factfinder could infer on this record, beyond a reasonable doubt, that J's pregnancy terminated on the date of her follow-up appointment, as opposed to any other date in the preceding weeks.
The state's third argument-that it is reasonable to infer that J miscarried after defendant's third assault-fails for similar reasons.[2] It is possible that J's pregnancy terminated after defendant hit her in the stomach on September 11, if she was still pregnant at that time and if defendant's conduct was sufficient to trigger a miscarriage, as the state presumes. Or. it is possible that J's pregnancy terminated after she fell off defendant's truck on September 7 (and before September 11), if she was still *694 pregnant at that time and if what occurred was sufficient to trigger a miscarriage. Or. it is possible that J's pregnancy terminated at some other time entirely, for a reason unrelated to the assaults-especially given the early stage of the pregnancy-which termination could have occurred at any time after August 18. There is no evidence in the record that makes any one of those possibilities any more likely than another. Indeed, the state does not contend that there is. Instead, it argues that, because it is possible that J's pregnancy terminated after the third assault, it does not matter that it is also possible that J's pregnancy terminated after the second assault, or at some other time entirely-the state argues that the factfinder is allowed to choose between all "reasonable inferences." We disagree. Choosing arbitrarily between possibilities is speculation, not reasonable inference.
To be clear, we do not mean to suggest that expert medical testimony was necessarily required to establish whether J was pregnant at the time of each assault. In many situations, circumstantial evidence or a woman's own testimony may be sufficient to establish that a woman was pregnant on a particular date, was not pregnant on a particular date, or miscarried on a particular date. In this case, given the early stage of J's pregnancy and her apparent unawareness of its termination until notified by a medical professional, medical testimony may have been necessary to provide enough information for a factfinder to determine whether J
*556 was pregnant on the dates of the assaults. Or, J's own testimony might have been sufficient to establish the necessary facts, if J had been questioned about her pregnancy more than she was.
On this very limited record, however, there was simply no way for the factfinder to apply logic to make a reasonable inference whether J was or was not pregnant on August 28, September 7, or September 11. To say that she was pregnant is only to speculate. We therefore reverse defendant's felony convictions on Counts 3, 4, and 7, and remand for entry of misdemeanor convictions on those counts.
Reversed and remanded as to Counts 3, 4, and 7; otherwise affirmed.

The legislature enacted ORS 163.160(3)(d) in 2009 as part of House Bill (HB) 3505-A (2009). Earlier that year, someone had killed a woman who was eight months pregnant and cut the baby from her womb. It came to the legislature's attention that the unborn child, who did not survive, was "not considered a murder victim" under existing law. Staff Measure Summary, House Committee on Rules, HB 3505, June 23, 2009. As a result, HB 3505-A was introduced to "increase penalties for an attack on or killing of a pregnant person." Id . That legislative history is consistent with the plain language of ORS 163.160(3)(d) and makes clear that the statutory purpose-essentially to penalize assaults on fetuses via their mothers-is served only if the victim is actually pregnant.

Defendant contends that the state did not make its third argument in the trial court, and we note that the state does not posit it as an alternative basis to affirm. However, because we reject it on the merits in any event, we do not address the procedural issue.