Argued and submitted April 19, reversed and remanded June 7, 2023

In the Matter of J. D. B.,
a Youth.
STATE OF OREGON,
*Respondent,*

*v.*

J. D. B.,
*Appellant.*

Lane County Circuit Court
21JU00348; A175772

532 P3d 99

Youth appeals from a judgment finding him within the jurisdiction of the juvenile court based on acts that, if committed by an adult, would constitute assault in the first degree, ORS 163.185. In the adjudicatory proceeding, youth asserted that he had stabbed the victim (D) in self-defense, an argument the juvenile court ultimately rejected. In his first assignment of error, youth contends that the juvenile court erred in denying his motion to dismiss based on the insufficiency of the evidence, maintaining that the state failed to disprove his claim of self-defense beyond a reasonable doubt. In his second and third assignments of error, he argues that the juvenile court erred when it denied his motion to dismiss based on the state's violation of due process, because the state failed to disclose that it came into possession of D's phones during the factfinding proceeding. *Held*: The Court of Appeals rejected youth's first assignment of error, because the evidence in the record permitted the factfinder to conclude that the state had disproved youth's claim of self-defense beyond a reasonable doubt. As to youth's second and third assignments of error, the court concluded that once the police executed the search warrant for D's phones, the state's failure to disclose its possession of them during the factfinding proceeding violated due process, because the phones likely contained content that was material to youth's self-defense claim.

Reversed and remanded.

Debra E. Velure, Judge.

Christa Obold Eshleman argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Tookey, Presiding Judge, and Egan, Judge, and Kamins, Judge.

KAMINS, J.

Reversed and remanded.

**KAMINS, J.**

Youth appeals from a judgment finding him within the jurisdiction of the juvenile court based on acts that, if committed by an adult, would constitute assault in the first degree, ORS 163.185. In the adjudicatory proceeding, youth asserted that he had stabbed the victim (D) in self-defense, an argument the juvenile court ultimately rejected. In his first assignment of error, youth now contends that the juvenile court erred in denying his motion to dismiss based on the insufficiency of the evidence, and maintains that the state failed to disprove his claim of self-defense beyond a reasonable doubt.[1] In his second and third assignments of error, he argues the juvenile court erred when it denied his motion to dismiss based on the state's violation of due process under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). We reverse and remand.

According to youth, he was being sexually abused by D since 2019 when youth was 16 and D was in his mid-30s. On January 24, 2021, youth stabbed D multiple times with a knife, and the state initiated delinquency proceedings, asserting that youth engaged in conduct that, if committed by an adult, would constitute assault in the first degree, ORS 163.185. Youth raised the defense of self-defense, and during the adjudicatory proceeding moved to dismiss on the basis that the state had failed to disprove his self-defense claim. The juvenile court denied youth's motion and adjudicated him for acts that, if committed by an adult, would constitute assault in the first degree.

We reject youth's first assignment of error that the evidence was insufficient, because the evidence in the record permitted the factfinder to conclude that the state had disproved youth's claim of self-defense beyond a reasonable doubt. Although the record also would have supported the opposite conclusion, that is not enough for us to reverse

---

[1] During the factfinding proceeding, youth referred to his motion as a motion for judgment of acquittal. However, the proper mechanism for challenging the sufficiency of the evidence in a juvenile proceeding is a motion to dismiss, rather than a motion for judgment of acquittal. *See State v. G. L. D.*, 253 Or App 416, 424 n 4, 290 P3d 852 (2012), *rev den*, 354 Or 597 (2013) (so stating). As in *G. L. D.*, we treat the motion for judgment of acquittal as a motion to dismiss. *Id.*

based on the sufficiency of the evidence. *See State v. Olson*, 296 Or App 687, 691-92, 439 P3d 551 (2019) ("[I]f established facts can support multiple reasonable inferences, it is for the factfinder to decide which inference to draw." (Citation and internal quotation marks omitted.)).

Turning to youth's second and third assignments of error, we lay out the procedural facts as they occurred in some detail. In February, before the factfinding hearing, youth filed a motion for pretrial production of D's cellphones and *in camera* review for evidence that D had sexually abused youth. According to youth, the phones contained potentially exculpatory material in the form of recordings of sexual acts between youth and D as well as suggestive text messages, which was relevant evidence of youth's and D's states of mind and was also relevant for impeachment purposes. The state objected to the motion, asserting that that evidence would not be useful or relevant for cross-examination of D, and also that because it did not have the phones, nor did it have access to the phones, *Brady* was inapplicable. The juvenile court ultimately granted youth's motion for pretrial production with a protective order.

At the hearing, the state suggested that the court appoint counsel for D if it granted the motion to compel material that could potentially incriminate him, and the court agreed. Youth served D with the subpoena *duces tecum* ordering the production of the cell phones, and D, with the aid of counsel, moved to quash the subpoena on the basis that it would violate his state and federal rights against self-incrimination. The state filed a response in support of D's motion. The juvenile court ultimately granted the motion to quash the subpoena.

A few days before the factfinding proceeding in March, a detective interviewed youth as part of a criminal investigation into his allegations of sexual abuse against D, at which point youth discovered that the police were attempting to obtain a search warrant for D's phones. The day before factfinding, youth filed a motion to dismiss, arguing that the state violated his right to due process by helping D to successfully quash youth's subpoena, while simultaneously working to obtain a search warrant for the same evidence

to be used in its prosecution of D.[2] The state requested more time to respond, and the juvenile court granted that request. The parties addressed the motion to dismiss a couple of weeks after the adjudicatory proceeding.

As it turned out, the police had executed the search warrant for D's phones on the day of youth's factfinding proceeding in March, ultimately coming into possession of the phones in the middle of the adjudicatory proceeding.[3] The juvenile court denied the motion to dismiss, determining that any evidence of sexual abuse contained in the phones was not material to the outcome of the proceeding.

On appeal, youth argues that the state violated his *Brady* rights by failing to disclose that it had obtained D's phones because the evidence of D's abuse of youth was material to his claim of self-defense.[4] The state maintains that any evidence of sexual abuse contained in the phones would not have been material, and therefore no *Brady* violation occurred.[5]

As an initial matter, the disclosure requirements outlined by *Brady* apply in the context of juvenile delinquency proceedings. Juvenile proceedings must "comport with the fundamental fairness demanded by the Due Process Clause." *Schall v. Martin*, 467 US 253, 263, 104 S Ct 2403,

---

[2] D was ultimately convicted of three counts of sexual abuse against youth.

[3] The factfinding proceeding was held on March 12, 2021, from 9:01 a.m. to 4:10 p.m., and the return of the search warrant shows that the warrant for the phones was executed that day at 1:24 p.m.

[4] We reject youth's argument that the state violated *Brady* by not disclosing the warrant and affidavit for D's phones without discussion.

[5] The state also contends that youth's arguments below focused on the state's failure to disclose the *affidavit* in support of the search warrant to obtain the phones, rather than the phones themselves, and therefore his arguments as to the phones are unpreserved. We disagree. Youth's need to have access to the information on D's phones was the subject of most of the motion to dismiss proceeding, as well as previous hearings handled before the adjudication, and the state had adequate opportunity to respond to those arguments. Moreover, the juvenile court did rule on the merits of the contention—whether the evidence of sexual abuse was material. Altogether, the record demonstrates that the policies underlying preservation were served. *See State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009) ("Ultimately, the preservation rule is a practical one, and close calls *** inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served.").

81 L Ed 2d 207 (1984) (internal quotation marks omitted). There is no question that it is a fundamental violation of due process for the state to withhold evidence that is favorable to an accused where the evidence is material to either guilt or punishment. *Brady*, 373 US at 87.[6]

We agree with youth that, once the police executed the search warrant for D's phones, the state's failure to disclose its possession of the phones during the factfinding proceeding violated due process, because they likely contained content that was material to youth's self-defense claim. *See Turner v. United States*, 582 US 313, 324, 137 S Ct 1885, 198 L Ed 2d 443 (2017) (evidence is material under *Brady* when there is a "reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different" (citation and internal quotation marks omitted)). Evidence of sexual abuse was relevant to youth's self-defense theory; that is, whether youth's subjective fear of the victim was objectively reasonable. *See* ORS 161.209 ("a person is justified in using physical force upon another person for self-defense * * * from what the person reasonably believes to be the use or imminent use of unlawful physical force, and the person may use a degree of force which the person reasonably believes to be necessary for the purpose"); *State v. Beisser*, 258 Or App 326, 334, 308 P3d 1121 (2013) ("When a defendant raises the defense of self-defense, evidence of the alleged victim's prior violent acts toward the defendant is admissible under OEC 404(1)."). Without that evidence, the factfinder did not have a complete picture of the relevant circumstances between youth and D, thereby undermining confidence in the outcome of the adjudicatory proceeding. *See Turner*, 582 US at 324 ("A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial."

---

[6] In this appeal, the state has not argued that the requirements of *Brady* do not apply to juvenile proceedings, and it does not appear to be in dispute nationally that *Brady* applies to juveniles. *See, e.g.*, *J. E. v. Superior Ct*, 223 Cal App 4th 1329, 1335, 168 Cal Rptr 3d 67, 70 (2014) ("The *Brady* disclosure requirement applies to juvenile delinquency proceedings as well as criminal proceedings."); *State ex rel L. V.*, 66 So 3d 558, 561-62 (La Ct App 2011) (addressing merits of juvenile's *Brady* claim); Anna Vancleave, *Brady and the Juvenile Courts*, 38 NYU Rev L & Soc Change 551, 552 (2014) ("There is no question that the *Brady* right exists in juvenile court.").

(Citation and internal quotation marks omitted.)); *State v. Bray*, 363 Or 226, 238-39, 422 P3d 250 (2018) (reasoning that "to prove a due process violation based on a deprivation of evidence, a defendant must demonstrate that the loss of evidence was so material and favorable that it prevented a fair trial").

We observe that the speed at which juvenile proceedings take place is in part responsible for the violation, and in fact, is a structural barrier to *Brady* litigation for juveniles generally. *See* Anna Vancleave, *Brady and the Juvenile Courts*, 38 NYU Rev L & Soc Change 551, 554 (2014) (describing the fact that "the life of a juvenile case is significantly shorter than that of an adult criminal case" as a structural aspect of juvenile court proceedings that "create[s] a poor platform for *Brady* litigation and make[s] it unlikely that *Brady* violations will come to light"). The total time that elapsed between the offense and the date of adjudication was 47 days. The police were still in the beginning of their investigation into youth's claims of sexual abuse by D when the case against youth was concluded.

Even so, the state knew a month before the adjudicatory proceeding of the potential evidence contained in the phones and given the fact that the police began their investigation into youth's allegations soon after youth's motion to compel production, it should have anticipated the possibility that it would come into possession of D's phones during the adjudicatory proceeding. As such, it should have been prepared to disclose that it had obtained the phones and the contents of the phones as soon as they came into the state's possession. Such anticipation is especially important because the state's discovery obligations do not end with the beginning of the adjudicatory proceeding. *See* ORS 135.845(2) (declaring that if "a party finds, either before or during trial, additional material or information which is subject to or covered by these provisions, the party must promptly notify the other party of the additional material or information"); ORS 419C.270(6) (ORS 135.845 applies in juvenile proceedings); American Bar Association's *Juvenile Justice Standards Relating to Pretrial Court Proceedings* (1979), Standard 3.15 (there is a continuing duty to disclose to the other party, and if additional material is discovered

during trial, the court should also be notified). Furthermore, the state has a duty to learn of any favorable evidence known to the police. *Kyles v. Whitley*, 514 US 419, 437, 115 S Ct 1555, 131 L Ed 2d 490 (1995). That responsibility is all the more important in the juvenile context, where compressed timelines make it less likely that *Brady* violations will be litigated pre-adjudication.

"[T]he legislative purpose of the juvenile code is reformation, not punishment." *State v. B. Y.*, 319 Or App 208, 217, 510 P3d 247, *rev allowed*, 370 Or 455 (2022). Nevertheless, the state treated youth as a danger to be aggressively and punitively prosecuted, despite knowledge of potential mitigating information.[7]

Having determined that the juvenile court erred, we must determine the appropriate remedy. Youth presented the issue in the context of a motion to dismiss the adjudication and argues on appeal that the state's conduct was so egregious as to merit that remedy. We disagree both that the state's conduct required such a remedy and that dismissal was the juvenile court's only permissible option. *See State v. Kennedy*, 295 Or 260, 276, 666 P2d 1316 (1983) (a retrial is barred under the state constitution when misconduct is "so prejudicial to the defendant that it cannot be cured by means short of a mistrial, and *** the official knows that the conduct is improper and prejudicial and either intends or is indifferent to the resulting mistrial or reversal"). Although the state's conduct was certainly inappropriate, the record does not contain the information necessary to determine that a retrial would be barred under the state constitution. *See State v. Mays*, 269 Or App 599, 617, 346 P3d 535, *rev den*, 358 Or 146 (2015) (to bar a retrial, "[t]he official *** must have acted with knowledge of the improper and prejudicial nature of the conduct and with at least indifference to the resulting mistrial" and negligence,

---

[7] We observe that the state at trial downplayed the sexual abuse (which the state was simultaneously criminally investigating) by characterizing it as a "sexual relationship," which minimized the importance of the *Brady* material. As a minor, youth was incapable of consenting to any sexual contact with an adult more than twice his age. *See* ORS 163.415(1)(a)(B) (sexual abuse in the third degree occurs when the victim is incapable of consent by reason of being under 18 years of age).

"gross or otherwise, is not enough") (emphasis and internal quotation marks omitted).

As youth is not entitled to outright dismissal, we conclude that the proper remedy is to reverse and remand for a new factfinding proceeding. *See State v. Deloretto*, 221 Or App 309, 321, 189 P3d 1243 (2008), *rev den*, 346 Or 66 (2009) ("It is not legally permissible for a trial court to deny a new trial for a *Brady* violation if there is a 'reasonable probability' that the suppressed evidence would have resulted in a different outcome[.]" (Quoting *United States v. Bagley*, 473 US 667, 682, 105 S Ct 3375, 87 L Ed 2d 481 (1985))); *see Turner*, 582 US at 324 (defining "a reasonable probability of a different result" as one in which "the suppressed evidence undermines confidence in the outcome of the trial" (citation and internal quotation marks omitted)).

Reversed and remanded.