No. 162  February 25, 2026  509

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of K. D. B.,
a Youth.

STATE OF OREGON,
*Respondent,*

*v.*

K. D. B.,
*Appellant.*

Washington County Circuit Court
23JU02014; A184871

Michele C. Rini, Judge.

Argued and submitted January 20, 2026.

Christa Obold Eshleman argued the cause for appellant. Also on the briefs was Youth, Rights & Justice.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Interim Deputy Attorney General.

Before Aoyagi, Presiding Judge, Kamins, Judge, and Pagán, Judge.

AOYAGI, P. J.

Jurisdictional judgment reversed as to Count 3; otherwise affirmed.

**AOYAGI, P. J.**

Youth appeals a juvenile court judgment asserting delinquency jurisdiction over him for committing an act that, if committed by an adult, would constitute second-degree sexual abuse. He raises two assignments of error. First, youth contends that the court erred in denying his motion for a judgment of dismissal, because the evidence was legally insufficient to prove second-degree sexual abuse. Second, alternatively, youth posits that the court erred in denying his request for a jury trial, arguing that existing case law denying a jury right in juvenile proceedings should be revisited in light of changes to Oregon's juvenile justice system over time, including regarding juvenile sex-offender registration, as well as shifts in constitutional legal analysis. As explained below, we agree with youth that the evidence was legally insufficient to prove the mental-state element of second-degree sexual abuse and reverse the jurisdictional judgment on that basis. We need not reach the second assignment of error given our disposition.

The delinquency petition alleged that youth committed three counts of second-degree sexual abuse. Counts 1 and 2 were ultimately dismissed, so we limit our discussion to Count 3. Count 3 alleged that, on or about July 12, 2021, youth "did unlawfully and knowingly subject [J] to an act of sexual intercourse, the said [J] not consenting thereto." At the contested jurisdictional hearing, youth moved for a judgment of acquittal, which is more properly termed a motion for a judgment of dismissal. *See State v. J. D. B.*, 326 Or App 237, 239 n 1, 532 P3d 99 (2023) (a motion for a judgment of dismissal is "the proper mechanism for challenging the sufficiency of the evidence in a juvenile proceeding" and is akin to a motion for a judgment of acquittal in adult court). The juvenile court denied the motion. That is the ruling that youth challenges on appeal, so we state the facts in accordance with the standard of review for that ruling. That is, we describe the evidence in the light most favorable to the state, including allowing for reasonable inferences. *State v. B. I. Z. V.*, 332 Or App 726, 732, 734, 550 P3d 985 (2024). Ultimately, we must decide whether, so viewing the evidence, a rational trier of fact could find the elements of

second-degree sexual abuse proved beyond a reasonable doubt. *Id*. at 732.

Viewed in the light most favorable to the state, the evidence was as follows. Youth and J were students at the same high school. On July 11 or 12, they started spending time together and texting each other. Youth was 15 years old; J was one grade above him. On July 12, J invited youth to her house, and they had sex in her bedroom. J could not remember exactly how it started, but her recollection was that they were "kind of flirty with each other, and then eventually started kissing, and then it kind of just went on from there." With J's consent, they took off their clothes and began having sexual intercourse. At some point "in the middle of it," J said, "Wait, it hurts." Youth responded, "Hold on, I'm almost finished." J did not say anything further, and they "just kind of went on till he was done," which took "a couple more minutes." J later described herself as having "just kind of [gone] into the fawn response and just kind of [taking] it and [being], like, okay, this is happening now." Once they finished having sex, they sat on the bed and hung out for a while. At the time, J "didn't really process that it was a bad thing that had just happened." She was friendly with youth afterwards and continued to hang out with him, including developing a romantic interest in him and having consensual sex with him on other occasions.

In December 2021, a school resource officer at the high school was investigating some rumors and interviewed J as part of that investigation. The officer discussed the concept of consent with J, including characterizing it as a "bright, shiny line." According to J, it was her interview with the school resource officer that caused her to realize that a portion of the intercourse with youth on July 12 was nonconsensual.[1]

---

[1] Specifically, the prosecutor asked, "So, once this was all done, what happened next?" J answered, "I think we just kind of sat on my bed after that. I didn't really process that it was a bad thing that had just happened, so I was still friendly and we were still hanging out after that." The prosecutor followed up, "What do you mean you did not process that it was a bad thing that had happened?" J answered, "It took me until I was in the interview with Officer Wolfer to realize that was not consensual." The prosecutor clarified, "[I]s that because you had a specific conversation with Officer Wolfer regarding what constituted consent?" J answered, "Yes."

The question on appeal is whether the evidence was sufficient to prove second-degree sexual abuse. As relevant here, a person commits second-degree sexual abuse when a person "subjects another person to sexual intercourse *** and the victim does not consent thereto." ORS 163.425(1)(a). Second-degree sexual abuse is a serious offense—a Class C felony. ORS 163.425(2). It is also an offense within the Criminal Code, so a culpable mental state is required for "each material element of the offense that necessarily requires a culpable mental state." ORS 161.095(2). Youth was charged with "knowingly" subjecting J to sexual intercourse without her consent, which was the minimum culpable mental state for the nonconsent element of second-degree sexual abuse in July 2021. *State v. Haltom*, 366 Or 791, 824, 472 P3d 246 (2020) (holding "that the requirement in ORS 163.425(1)(a) that the victim 'does not consent' is an integral part of the conduct that the statute proscribes, and that proof of a minimum mental state of 'knowingly,' as defined in ORS 161.085(8), is required with respect to that element").[2] A person acts "knowingly" when a person "acts with an awareness that the conduct of the person is of a nature so described." ORS 161.085(8).

The state therefore was required to prove beyond a reasonable doubt that youth *knew* that J did not consent to sexual intercourse on July 12—or, more precisely, because it is undisputed that she initially consented, that youth knew that J ceased consenting "in the middle." Youth argues that the evidence was legally insufficient to prove knowledge. The state's response is straightforward—it argues that, by saying, "hold on, I'm almost finished," youth acknowledged hearing J say "wait, it hurts," which is enough to prove that he knew that she no longer consented to sexual intercourse.

We are unpersuaded by the state's argument. Viewed in the light most favorable to the state, J made an ambiguous statement in the midst of consensual sexual intercourse between two teenagers. The evidence adduced at the delinquency hearing allows a reasonable inference that J

_____

[2] The legislature amended ORS 163.325 in response to *Haltom*, adding an affirmative defense relating to nonconsent, but those amendments did not go into effect until January 1, 2022, so they are not at issue here. Or Laws 2021, ch 410, § 1.

subjectively wanted youth to stop what he was doing, including perhaps stopping intercourse altogether. However, J's internal thought processes have limited relevance to whether the evidence was sufficient to prove that youth knowingly subjected J to nonconsensual sex. The state had to put forward direct or circumstantial evidence sufficient to prove beyond a reasonable doubt that youth *knew* that J had withdrawn her prior consent and thus *knew* that he was subjecting J to nonconsensual sexual intercourse from that point forward.

We conclude that the state failed to meet that burden. We disagree with the state that J saying "wait, it hurts," in the middle of consensual intercourse was an unambiguous withdrawal of consent to any continued intercourse, such that the state could meet its burden of proof by simply showing (as it did) that youth heard her say it. Rather, the statement was ambiguous in nature, in that those words could reasonably be understood in any number of ways, depending on context, including, for example, as a request that youth adjust his physical position, slow down, or pause without actually ceasing intercourse. The record is silent as to whether youth physically did anything that might evince how he personally interpreted J's statement. And even if one might reasonably infer that he did nothing but tell J that he was nearly done, it does not follow that youth understood J's statement to mean that she was no longer consenting to intercourse and was telling him to stop immediately. Doing nothing in response to such a statement may have been an immature or inconsiderate way to handle it, but it is not enough to prove a crime (or an act that would be a crime if committed by an adult). Without evidence of *something* that would clarify the ambiguity in J's statement—some other statement or action or larger contextual fact—the record is simply insufficient to prove beyond a reasonable doubt that youth knew that he was having sexual intercourse with J without her consent. It follows that the juvenile court erred in denying the motion for a judgment of dismissal on Count 3.

Accordingly, we reverse the jurisdictional judgment as to Count 3. We otherwise affirm, insofar as the juvenile court itself dismissed Counts 1 and 2, and those counts are not at issue on appeal.

Jurisdictional judgment reversed as to Count 3; otherwise affirmed.